PIONEER NATIONAL TITLE INSURANCE COMPANY, a California Corporation, Plaintiff,

v.

James C. SABO, Defendant.

Civ. A. No. 76–416.

United States District Court, D. Delaware.

May 3, 1977.

Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Howard M. Berg, of Berg, Komissaroff & Sawyer, Wilmington, Del., and Thomas J. Stumpf, Georgetown, Del., for defendant.

CALEB M. WRIGHT, Senior District Judge.

This is an attorney malpractice action in which plaintiff, Pioneer National Title Insurance Company ("Pioneer") is seeking recovery from defendant, James C. Sabo, for losses arising out of work performed by Sabo as an agent of Pioneer.[1] The claim is based on Sabo's alleged failure to determine

---

1. Jurisdiction is based on diversity under 28 U.S.C. § 1332. Pioneer was incorporated in California, Sabo is a Delaware resident, and the amount in controversy exceeds $10,000.00, exclusive of interest and costs.

that no unrecorded and unfiled mechanics' liens existed prior to his issuing a title insurance policy which insured against such a contingency. Defendant's Motion to Dismiss based upon the statute of limitations is currently before the Court.

In 1972, Sabo entered into an agreement with Pioneer whereby Sabo was employed as Pioneer's attorney and agent with authority, subject to certain limitations not pertinent to this motion, to examine titles to real estate and issue title insurance policies thereon on behalf of Pioneer. Sabo issued a title insurance policy on April 26, 1973 insuring a construction money mortgagee and obligating the insurer to pay any losses or damages by reason of, among other things:

> any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage, . . .

On December 11, 1973, a statutory mechanics' lien was filed against the mortgagor with respect to the insured property, claiming a lien in the amount of $32,694.25 and a priority date of April 3, 1973, which, if valid, would make it prior to the insured mortgage. Due to default, the mortgagee foreclosed and the real estate was eventually sold. The Sheriff retained $35,932.41, which otherwise would have been payable to the mortgagee, on account of the lien, interest, and costs, pending resolution of the validity of the lien. That litigation is still pending. Should the lien be determined to be valid and to have priority over the mortgage, Pioneer will be obligated under the policy written by Sabo to reimburse the mortgagee for its losses. Pioneer seeks recovery from Sabo for any such losses, claiming that he has a duty to indemnify, and that he has breached the attorney-agent agreement, his professional duty as an attorney, and his professional duty as a title insurance agent.

In the instant motion, Sabo contends that the complaint should be dismissed because the action is barred by the applicable statute of limitations. Jurisdiction being based solely upon diversity of citizenship of the parties, the Court must apply the statute of limitations which would be applied had this suit been brought in state court. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); and *Hendrickson v. Sears,* 495 F.2d 513 (1st Cir. 1974). Regardless of whether the instant legal malpractice action is characterized as being in tort or contract, the applicable statute of limitations is 10 Del.C. § 8106. *Hood v. McConemy,* 53 F.R.D. 435, 443–44 (D.Del.1971). That statute provides, *inter alia:*

> ". . . no action based on a promise . . . and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action. . . ."

Sabo's argument is that the cause of action accrued, if at all, at the time of the alleged malpractice, which, in this case, would be when the policy was written on April 26, 1973. Thus, the three year statute of limitations would begin to run at that time and expire on April 26, 1976, barring this action filed on November 24, 1976. In response, Pioneer argues that the "discovery rule" should apply and the statute should not begin to run until the plaintiff knew, or should have known, of the cause of action. Applying this rule to the case at bar, Pioneer claims that the earliest it became aware of, or should have become aware of, the cause of action was when the mechanics' lien was recorded on December 11, 1973. If the three year statute of limitations is calculated from that date, the November 24, 1976 complaint in this case would be timely by seventeen days. The issue which is dispositive of this motion, then, is whether the cause of action accrued at the time the malpractice occurred or at the time plaintiff first knew, or should have known, about it.

In a diversity case, the issue of when a cause of action accrues under a state statute of limitations is an issue of state law. *Hendrickson v. Sears, supra.* This Court, sitting as a diversity court, must endeavor to determine what rule the Delaware Supreme Court would apply. *Huddell v. Levin,* 395 F.Supp. 64 (D.N.J.1975).

The most recent pronouncement of the Delaware Supreme Court with respect to the rule to be applied in determining when a cause of action in professional malpractice cases accrues is *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* 330 A.2d 130 (Del. 1974). That case was a malpractice action against a partnership of Certified Public Accountants. The plaintiff alleged that in 1962 the accountants had improperly neglected to obtain consent from the Secretary of the Treasury, or his delegate, for a change in an accounting practice. Plaintiff did not learn of this neglect until it received a notice of tax deficiency in 1967. The complaint was filed in 1971, and hence was time barred under the 3-year limitation of 10 Del.C. § 8106, unless the cause of action accrued in 1968 or later. The Delaware Supreme Court began its analysis by acknowledging that

> "The general law in this State is that the statute of limitations here involved begins to run at the time of the wrongful act, and ignorance of a cause of action, absent concealment or fraud, does not stop it." 330 A.2d at 132.

Ample authority was cited for this proposition: *Mastellone v. Argo Oil Corp.,* 7 Terry 102, 82 A.2d 379 (Del.1950); *Artesian Water Co. v. Lynch,* 283 A.2d 690 (Del.Ch.1971); and *Leibowitz v. Hicks,* 207 A.2d 371 (Del. Ch.1965). Nonetheless, the Court recognized that among the exceptions to the general rule, the case might fall within the "inherently unknowable" exception already established in *Layton v. Allen,* 246 A.2d 794 (Del.1968), a medical malpractice action involving a foreign substance left in plaintiff's body. The *Layton v. Allen* court said:

> "Upon the bases of reason and justice, we hold that when an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is 'sustained' under § 8118 when the harmful effect first manifests itself and becomes physically ascertainable. Translated in the terms of this case, we hold that the limitations period commenced to run when the plaintiff first experienced pain caused by the unknown foreign object. Since that event occurred in 1965 and this action was filed in 1966, the action is timely." 246 A.2d at 798.

The *Layton* court, considering the effect of a statute of limitations which ran from "when injuries were sustained", concluded that an injury was sustained when its effects were felt or produced. Although considering a different statute of limitations, which ran from the "accruing of the cause of action", and an accountant's malpractice case instead of a medical malpractice case, the *Isaacson* court analogized the case before it to *Layton v. Allen* and held that it fell within the "inherently unknowable" exception. Accordingly, the cause of action did not accrue until plaintiff first learned of, or with diligence could have learned of defendant's failure to comply with the law, when it received the notice of deficiency.

Yet, the scope of application of the "inherently unknowable" exception which results in application of the so-called time of discovery rule, is unclear.[2] In *Isaacson, supra,* the Delaware Supreme Court said it would not necessarily agree

---

**2.** Defendant asserts that the "inherently unknowable" exception has been limited in Delaware to medical malpractice cases. Reliance upon *Bradford, Inc. v. Travelers Indemnity Co.,* 301 A.2d 519 (Del.Super.1972), and this Court's opinion in *Hood v. McConemy, supra,* for this proposition is inappropriate. Those cases are unpersuasive because they were decided before

*Isaacson, supra.* Moreover, in both cases, summary judgment on the statute of limitations defenses was denied on the ground that the doctrine of fraudulent concealment might toll the running of the statute. Thus, neither court barred a plaintiff from obtaining relief by refusing to apply the "time of discovery" rule.

"with a broad application of the rule to all malpractice cases. Application of the 'time of discovery' rule is limited; and each case must stand or fall on its own facts, and those facts will determine whether it is an exception to the *Mastellone* rule." 330 A.2d at 133–34.

■ This Court must examine the facts of the case before it, as the Delaware Supreme Court said it would in *Isaacson, supra,* and, based upon that analysis, make a determination of whether or not the Delaware Supreme Court would apply the discovery rule to the instant case. Since the Court has been unable to discover a Delaware case precisely on the issue presented here, the Court must "consider such approach to the problem as may be indicated by the [Delaware] cases in the general field and to resort to general applicable principles to reach a conclusion consistent with [Delaware] law." *Costello v. Schmidlin,* 404 F.2d 87, 91 (3rd Cir. 1968). This determination must be based upon "all that is known about its methods of reaching decisions." *Huddell v. Levin, supra,* at 72. "In this respect, it may be said to be, in effect, sitting as a state court." *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967). In undertaking this " 'hazardous occupation' ", *Costello v. Schmidlin, supra,* at 91, the Court finds particularly helpful the approach taken by the Delaware Supreme Court in defining the exception, and the "general applicable principles", *Id.* articulated by the Delaware Supreme Court. The Court concludes that the Delaware courts would apply the discovery rule to determine when a cause of action accrued in this case.

In the discussion supporting its conclusion to apply the discovery rule in the case before the *Isaacson* court, it quoted with approval the following from the unreported opinion of the lower court:

"It would appear that the rationale in *Layton* and the modern view of accrual statutes of limitations support the conclusion that the statute should not run against an ignorant plaintiff, particularly where the 'triggering' of the cause of action depends on the action of a third party. This approach has obvious application to a taxpayer who does not know he has suffered a loss until the taxing authority asserts a claim. In such a triangular situation it would clearly work an injustice to expect Artisan's to anticipate, or even be aware of, a possible injury. This is, in effect, merely a refinement of the so-called rule of discovery and is particularly appropriate here because the discovery in this situation does not arise in a client-accountant relationship but in the client-taxing authority relationship." 330 A.2d at 133.

In the instant case, Pioneer's cause of action also depends upon the action of a third party in that it would not have suffered any injury had a third party not filed the lien. As was the case in *Isaacson, supra,* the triggering event here is precisely the contingency the professional was engaged to protect against. Insofar as the Delaware Supreme Court's approval of the language of the lower court represents adoption of a "refinement" of the "inherently unknowable" rule of discovery exception, the instant case falls squarely within that refinement.

In both *Layton v. Allen, supra,* and *Isaacson, supra,* the Delaware Supreme Court demonstrated a heightened concern with mitigating the harshness of the "time-of-wrong" rule, no longer applying it "systematically and remorselessly". *Freedman v. Beneficial Corp.,* 406 F.Supp. 917, 924 (D.Del.1975). In *Layton v. Allen,* the Court grounded its decision to apply the time of discovery rule on "bases of reason and justice", 246 A.2d at 798, saying:

"To say that the plaintiff has two years after the 'claimed' injury within which to maintain an action, and, at the same time, to say that the injury must be 'claimed' before she has, or can reasonably be expected to have, knowledge of any wrong inflicted upon her, is contrary to reason and justice. It is unreasonable, we think, to assume that the General Assembly intended to grant a remedy for a wrong but to bar the remedy before the

wrong was physically ascertainable by due diligence. To ascribe to the General Assembly any such unjust intent in the framing of § 8118 seems to us completely unreasonable." 246 A.2d at 797.

\* \* \* \* \* \*

"Finally, it is said that the result we reach here is contrary to the law's policy of repose, designed to protect parties from the hazards of stale claims. It cannot be said that the plaintiff in this case slept on her rights before she knew, or by reasonable diligence could know, that she had such rights. In this context, therefore, it cannot be said that she brings a stale claim. Under the circumstances, we have the duty of drawing the delicate line of adjustment between the duly diligent plaintiff and the wrongdoer. Where choice must be made between defendant's problems of lost evidence, faded memories, and missing witnesses, on the one hand, and a deprivation of the plaintiff of any and all remedy for the wrong done her, on the other, the law must be construed in favor of the blamelessly ignorant plaintiff and against the interests and convenience of the wrongdoer." 246 A.2d at 799.

These considerations were expressly approved of in *Isaacson*, in that the Court there stated it would follow the "rationale" of *Layton v. Allen*, 330 A.2d at 133. As the Supreme Court has said:

"Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' . . . Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights."

\* \* \* \* \* \*

"This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights." *Burnett v. New York Cen-*

*tral Railroad Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965) (citation and footnote omitted).

*See, also, American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554 (1974).

The *Isaacson* Court also expressly agreed with the principles articulated by, although not the breadth of the holding of, the California Supreme Court in *Neel v. Magana, Olney, Levy, Cathcart and Gelfand,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (Cal. 1971). That case involved a claim against attorneys for losses sustained due to the dismissal of a suit for failure to arrange for the service of a summons. Defendant's Motion for Summary Judgment based on the statute of limitations would have been granted if the cause of action accrued at the time of the last negligent act, but denied if the cause of action did not accrue until discovered. Reviewing the California cases which had adopted the former rule for lawyer malpractice actions, and finding no justification for treating lawyers differently from other professionals, the California Supreme Court undertook a complete re-examination of the issue.

The California Supreme Court held that the discovery rule should apply, finding justification in the special nature of the professional-client relationship:

". . . the special obligation of the professional is exemplified by his duty not merely to perform his work with ordinary care but to use the skill, prudence, and diligence commonly exercised by practitioners of his profession."

\* \* \* \* \* \*

"Corollary to this expertise is the inability of the laymen to detect its misapplication; . . . If he must ascertain malpractice at the moment of its incidence, the client must hire a second professional to observe the work of the first, an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client." 6 Cal.3d at 188, 98 Cal.Rptr. at 844, 491 P.2d at 428 (footnotes omitted).

The Court noted other aspects of the relationship supporting its decision, and stated its conclusion as follows:

"In summary, in our complex and interdependent society, human relations are ever being further fit into a frame work of legal rights and responsibilities, and, in this process, the role of the lawyer has become increasingly crucial. As more individuals are to depend upon him, his responsibility must broaden and deepen. Today, then, is no time to perpetuate an anachronistic interpretation of the statute of limitations that permits the attorney to escape obligations which other professionals must bear. The legal calling can ill afford the preservation of a privileged protection against responsibility, a privilege born of error, subject to almost universal condemnation, and in present-day society anomalous." 6 Cal.3d at 194, 98 Cal.Rptr. at 848, 491 P.2d at 432–33.[3]

These policy considerations, as approved by the Delaware Supreme Court in *Isaacson*, 330 A.2d at 133, support application of the time of discovery rule in the instant case. Sabo was retained by Pioneer to perform title searches before issuing policies. Pioneer relied upon him to execute this task according to the standards of his profession, and based his authority to issue policies upon their trust and confidence in his professional competence. Pioneer could discover any failure by Sabo to perform in a professionally competent manner at the time of such failure only by hiring a second lawyer to undertake the same title search. To require a client to retain a second lawyer to perform the same work to be sure that any cause of action arising from that work will not be time-barred, is to undercut severely the trust and confidence which a client has in an attorney and to waste resources unnecessarily. It would make the lawyer's services less valuable to the client.

This Court, sitting in a diversity case, is necessarily reluctant to extend the law of the state "in the absence of some indication from the courts of the forum that the extension would be desirable." *Kalmich v. Bruno*, 404 F.Supp. 57, 66 (N.D.Ill.1975). In light of the trend in the Delaware cases, the holdings of the Delaware Supreme Court in *Layton v. Allen, supra,* and *Isaacson, supra,* and the policy considerations explicitly endorsed in those opinions, the Court concludes that the Delaware Supreme Court would apply the time of discovery rule in the instant action to determine when a cause of action accrued.[4]

---

**3.** Since 1913, the California Civil Code has had a specific statute of limitations provision addressed to claims based, *inter alia,* on title abstracts:

". . . the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guarantee of title of real estate or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damages suffered by the aggrieved party thereunder." Cal.Code Civ.P. § 339(1) (West Supp.1972).

Regardless of whether the instant case falls within the scope of this provision or *Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* the discovery rule would clearly apply.

**4.** Notwithstanding the widespread adoption at one time of the rule that a cause of action accrues at the time of the malpractice in attorney malpractice cases; *see, e. g., Master Mortg. Corp. v. Byers,* 130 Ga.App. 97, 202 S.E.2d 566 (Ct.App.Ga.1973); *Boehm v. Wheeler,* 65 Wis.2d 668, 223 N.W.2d 536 (1974); and, *see* collection of cases at 18 A.L.R.3d 978, 1012 et seq. (1968), a rapidly increasing number of courts which had recently addressed the issue have decided to apply the time of discovery rule. In the precise context presented here, an attorney malpractice claim arising from errors made in connection with a title examination, a number of courts have recently applied the discovery rule. *Hendrickson v. Sears,* 495 F.2d 513 (1st Cir. 1974), and 310 N.E.2d 131 (Mass. 1974); *Family Savings & Loan, Inc. v. Ciccarello,* 207 S.E.2d 157 (W.Va.1974); *Thorne v. Johnson,* 483 S.W.2d 658 (Mo.Ct.App.1972) (title abstractor); *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969). A large and increasing number of jurisdictions have made it clear they would rule in a similar manner. *Peters v. Simmons,* 552 P.2d 1053 (Wash.1976) (En Banc) (all legal malpractice); *United States National Bank of Oregon v. Davies,* 274 Or. 663, 548 P.2d 966 (1976) (all legal malpractice); *Woodruff v. Tomlin,* 511 F.2d 1019 (6th Cir. 1975) (applying Tenn. law) (all legal malpractice); *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974); and *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn.1975); *Kohler v. Woollen, Brown & Hawkins,* 15 Ill.App.3d 455, 304 N.E.2d 677 (1973) cited with approval in *Tom Olesker's*

The filing of the lien on December 11, 1973 placed Pioneer on notice of the potential for a claim to be filed under the title insurance policy written by Sabo. Although Sabo has urged that Pioneer could have discovered the default, if any, at an earlier time, the moving papers and pleadings are devoid of any factual support. Thus, for the purposes of this motion, the Court is not persuaded that Pioneer could have, with diligence, discovered the existence of a cause of action prior to December 11, 1973.[5] Since the complaint was filed on November 24, 1976, it was filed within the three year period allowed under 10 Del.C. § 8106. Accordingly, defendant's Motion to Dismiss is denied.

*Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 334 N.E.2d 160, 163–64 (1975); *Edwards v. Ford,* 279 So.2d 851 (Fla.1973); *New Market Poultry Farms, Inc. v. Fellows,* 51 N.J. 419, 241 A.2d 633 (1968); *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94 (1967); and *White v. Schnoebelen,* 91 N.H. 273, 18 A.2d 185 (1941).

5. It may be that the cause of action has not yet accrued due to the lack of cognizable damage suffered by plaintiff pending the final adjudication of the validity and priority of the lien. *See Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433 (1971) and *United States National Bank of Oregon v. Davies,* 548 P.2d 966 (Or. 1976). Since the issue was not presented in this case, the Court has not addressed it.