**DAVID B. LILLY COMPANY, INC., a Delaware corporation, Plaintiff,**

**v.**

**G. Robert FISHER, an individual; Smith, Gill, Fisher & Butts, a Missouri professional corporation; Cadwalader, Wickersham & Taft, a partnership, Defendants.**

**Civ. A. No. 89–683–JLL.**

United States District Court, D. Delaware.

Aug. 20, 1992.

---

Victor F. Battaglia and Francis S. Babiarz of Biggs & Battaglia, Wilmington, Del., for plaintiff.

Howard M. Handelman and Phebe S. Young of Bayard, Handelman & Murdoch, Wilmington, Del., for defendants G. Robert Fisher and Smith, Gill, Fisher & Butts.

Stephen E. Herrmann and Theodosia Price of Richards, Layton & Finger, Wilmington, Del., for defendant Cadwalader, Wickersham & Taft.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

David B. Lilly Company, Inc. ("plaintiff" or "Lilly Co.") filed suit against the law firm Smith, Gill, Fisher and Butts ("SGF & B") and one of the firm's partners, G. Robert Fisher ("Fisher"), alleging malpractice arising from a corporate acquisition. Plaintiff contends that, because of the malpractice, the transaction was improperly structured. As a result, plaintiff allegedly lost a significant government contract and needed to be restructured. (Docket Item ["D.I."] 1 ¶¶ 5, 7–13, 14, 15; 48 ¶¶ 2–4, 9, 12–13, 17–18; 64 ¶¶ 2–4.)

Before the Court is defendants' motion for summary judgment. Defendants Fisher and SGF & B contend that: (1) the action is barred by the statute of limitations, and (2) the plaintiff could not reasonably rely on any legal advice given by the defendants. (D.I. 107.) As expected, the plaintiff disagrees and argues that there are genuinely disputed issues of material facts and that the action is not barred by the statute of limitations. (D.I. 119.)

For the reasons set forth below, the Court will deny defendants' motion for summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." "A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party is entitled to have all factual issues, and any reasonable inferences therefrom, resolved in its favor. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 900 (3d Cir.), *cert. dismd.,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Wilmington Housing Authority v. Pan Builders, Inc.,* 665 F.Supp. 351, 353 (D.Del. 1987).

The appropriate inquiry is whether there is a need for a trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[I]n other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* The mere existence of a scintilla of evidence in support of the non-moving party will not prevent the grant of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Id.* at 249, 106 S.Ct. at 2510–11.

## BACKGROUND

The Jordan Company ("Jordan"), which is in the business of acquiring operating businesses, approached David B. Lilly, Sr. with a proposal to acquire his corporation ("David B. Lilly Company, Inc." or "Lilly Co."). (D.I. 108 A–6 to 8, A–33; 120 A–24, A–29; 123 at 3.) The corporation was classified as a "small business" with the Small Business Administration ("SBA") and its operations depended upon this classification. (D.I. 123 at 3–4.) After negotiations, Mr. Lilly agreed to sell his interest in Lilly Co. but he conditioned the transaction on the maintenance of the small business status. (D.I. 123 at 3–4.) Jordan understood the importance of this condition to the transaction. (D.I. 108 A–13; 120 A–29 to 31, A–102, A–103; 123 at 4.)

Jordan's leading partner in the Lilly transaction, David Zalaznick, retained the defendants on behalf of Jordan to consummate the transaction. (D.I. 108 A–12, A–99, A–109; 120 A–19, A–21, A–51, A–210.) Defendants were informed of the condition precedent. (D.I. 108 A–13; 120 A–61, A–210; 123 at 3–4.) Neither David B. Lilly, Sr. nor the Lilly Co. retained separate counsel, deciding instead to leave the legal work to the defendants. (D.I. 107 at 13–14; 108 A–25 to 26, A–54, A–56, A–67 to 75, A–89; 120 A–4 to 5, A–47 to 49, A–210; 123 at 4.) The acquisition was to be accomplished by the sale of David B. Lilly, Sr.'s stock to a newly formed Delaware corporation named Lilly Holdings, Inc. David Zalaznick was the president and assistant secretary of Lilly Holdings when it acquired the Lilly Co. stock. (D.I. 108 A–109 Ex. C–3; 123 at 3.) Lilly Holdings, Inc. would thereafter be merged into its subsidiary corporation, David B. Lilly Company, Inc., and the subsidiary would be the surviving company. David Zalaznick became a director, vice president, and assistant secretary of the surviving company. (D.I. 108 A–109 Ex. C–7; 120 A–63.)

Although defendants had completed preliminary research into the SBA issue for a previous transaction, they did not have expertise in government contracting or SBA regulatory compliance. (D.I. 120 A–8; 123 at 4.) Defendant Fisher informed Zalaznick of this deficiency in expertise and Zalaznick suggested that he consult a second law firm, Cadwalader, Wickersham & Taft

("CW & T")[1], for assistance with this issue prior to closing on the deal. (D.I. 108 A–17 to 18, A–109; 120 A–84, A–102; 123 at 4–5.) Defendant Fisher wrote to David W. Feeney, a partner at CW & T on December 5, 1984 and requested that he examine the SBA issue on a "preliminary basis." (D.I. 108 A–109 Ex. A; 120 A–6, A–107; 123 at 4.)

In response to this letter, David Feeney discussed the SBA issue with a CW & T associate, knowledgeable in the government contract area, and with defendant Fisher. (D.I. 123 at 4–5.) Defendant Fisher discussed the SBA issue with both CW & T lawyers and also with David B. Lilly, Sr. and David Zalaznick. (D.I. 108 A–13, A–16; 120 A–28, A–30; 123 at 4–5.) David Zalaznick knew of the discussions between CW & T and defendant Fisher and he was informed that Fisher was relying on CW & T's advice. (D.I. 108 A–16.) Zalaznick also knew that the deal would be structured, based upon these discussions, to deal with the SBA issue. (D.I. 108 A–15 to 20, A–49; 120 A–83.)

The defendants structured the transaction to protect the small business status and to maintain the corporation's power, authority, and legal right to continue to engage in its previous business. (D.I. 108 A–56, A–60, A–109 Ex. C, A–110; 120 A–30, A–31, A–90; 123 at 5.) When the newly structured corporation submitted a bid for a government contract in 1989, a competitor challenged plaintiff's small business status. (D.I. 120 A–184 to 191; 123 at 5.) Realizing the flawed corporate structure,

plaintiff withdrew the bid, restructured its corporate organization to comply with the small business status regulations, and filed this action for legal malpractice. (D.I. 108 A–63; 123 at 5.) During the restructuring, David Zalaznick and the Jordan investors requested and received a release from Lilly Co. for all liability for losses arising from the 1984 transaction. (D.I. 108 A–101, A–104 to 105.)

## DISCUSSION

## I. STATUTE OF LIMITATIONS

### A. *Delaware Law*

■ Both parties agree that Delaware law controls the statute of limitations analysis. (D.I. 107; 119; 122.) Legal malpractice actions are barred after three years in Delaware, 10 *Del.C.* § 8106 (1975 & Supp. 1990), and the cause of action accrues at the time of the wrongful act. *Isaacson, Stolper & Co. v. Artisans Savings Bank,* 330 A.2d 130 (Del.1974). Ignorance of a cause of action will not toll the three year limitation period, *Mastellone v. Argo Oil Corp.,* 46 Del. 102, 82 A.2d 379, 383 (1951), unless the injury is "inherently unknowable" by a "blamelessly ignorant" plaintiff. *Kaufman v. C.L. McCabe & Sons, Inc.,* 603 A.2d 831, 835 (Del.1992); *Pioneer Nat'l Title Ins. Co. v. Sabo,* 432 F.Supp. 76, 79 (D.Del.1977) (the modern view of the discovery rule is that it is designed to protect a blamelessly ignorant plaintiff, "particularly where the 'triggering' of the

---

1. The plaintiff amended the original complaint to include CW & T as an additional defendant and the Court granted summary judgment in favor of CW & T on the plaintiff's direct claim. (D.I. 79; 80; 81; 84; 85.) The Court found no attorney/client relationship between plaintiff and CW & T.

The defendants, Fisher and SGF & B, filed a cross claim against CW & T and the Court granted summary judgment in favor of CW & T on this cross claim as well. (D.I. 64; 86; 123.) The Court refused to make a finding, as a matter of law, as to whether Fisher had retained CW & T, whether CW & T owed SGF & B a duty of reasonable care or as to the allocation of responsibility between the two firms and the extent of reliance for liability purposes. (D.I.

123 at 13 n. 7.) Rather, the Court held that any action for contribution or indemnity would be barred by the statute of limitations. (D.I. 123 at 21.)

The Court held that, from the evidence, no jury could reasonably conclude that a diligent lawyer would not have been aware of the injury at closing of the Lilly transaction. (D.I. 123 at 18.) Although the Court noted that the defendants undertook the responsibility for compliance with the SBA regulations themselves, it did not preclude the consultation with experts to fulfill this undertaking. (D.I. 123 at 19.) The Court merely stated that, even if CW & T was retained, the evidence showed that SGF & B was still intimately involved and either knew or should have known of any malpractice for statute of limitation purposes. (D.I. 123 at 19.)

cause of action depends on the action of a third party").

The end result of the two closely intertwined prerequisites for tolling the statute of limitations is an objective standard of reasonable discovery. The status of and the relationship between the parties must be taken into account because "each case must stand or fall on its own facts, and those facts will determine whether it is an exception to the *Mastellone* rule." *Isaacson, Stolper & Co. v. Artisans Savings Bank*, 330 A.2d at 133–34.

### B. *Application Of Delaware Law To The Present Case*

The plaintiff filed the present action in 1992 for alleged malpractice occurring in 1984. The plaintiff argues that the injury to the corporation was inherently unknowable, that the plaintiff was blamelessly ignorant, and that the three year limitation period should be tolled until the injury was discovered in 1989. The defendants contend that summary judgment is appropriate because the action is barred by the statute of limitations and, therefore, the complaint does not state a claim for relief.

Defendants argue that Zalaznick's actions set the scene for mistakes and that he increased the risk of improper advice. Thus, they argue that the plaintiff is not blamelessly ignorant. More specifically, defendants argue that: (1) Zalaznick knew the importance of the SBA issue to the success of the transaction; (2) Zalaznick knew the defendants lacked the requisite expertise to structure the deal; (3) Zalaznick referred the defendants to CW & T, who he believed might possess the requisite expertise; (4) that Zalaznick did not authorize a legal opinion from CW & T and specifically limited the scope and expense of CW & T's investigation; (5) that Zalaznick knew the defendants were relying upon the advice given by CW & T but that he never warned the defendants of the inherent weakness of that advice nor did he prevent reliance on the advice; (6) the customary management structure was modified to conform with advice given by CW & T; and (7) that the plaintiff is charged with

Zalaznick's knowledge. (D.I. 107; 122; 128.)

There is no genuine dispute as to the parties' knowledge of the importance of compliance with the SBA regulations in the Lilly transaction. The Court also notes that, as a director and officer of the new corporation and the president of the vehicle for the merger, Zalaznick's knowledge and actions are imputed to the plaintiff. *Satellite Financial Planning Corp. v. First Nat'l Bank*, 633 F.Supp. 386, 400 (D.Del. 1986); *Bellanca Corp. v. Bellanca*, 53 Del. 378, 169 A.2d 620, 625 (1961). David Zalaznick concedes that he knew of defendant Fisher's lack of expertise and admits to referring defendant Fisher to Mr. Feeney at CW & T. (D.I. 108 A–15 to 18, A–109 Ex. A.) If Mr. Zalaznick then precluded substantive assistance from CW & T, unbeknownst to defendants, and if he knew the extent of defendant Fisher's reliance, the Court would have to agree that the plaintiff was not blamelessly ignorant. David Zalaznick cannot prevent a complete legal analysis into a key issue to save money and then have this Court permit his corporate successor-in-interest object to the disadvantages that Zalaznick created.

However, the conflicting evidence in the record as to Zalaznick's actions and intentions creates genuinely disputed material issues of fact. First, as noted in the Court's earlier opinion, the parties strenuously dispute whether CW & T's review and investigation was so limited, precursory, or general. The contradictory evidence on this issue precludes the grant of summary judgment. Defendant Fisher testified that he intended to "retain", and in fact did "retain," CW & T to render a legal opinion. As evidence he notes the written and telephone communication, the knowledge of CW & T's "retainer" by third parties, and the recommendations, guidelines, and advice given by CW & T. Furthermore, the defendants were convinced that CW & T was fully aware of all the relevant facts from which to procure an accurate legal opinion. (D.I. 123 at 13 n. 7.)

On the other hand, Mr. Feeney testified that CW & T was never "retained" and it

was only "consulted" for the benefit of their thoughts to foster good will with Jordan, a previous client. As evidence, CW & T notes that the record does not reflect that it was given complete information concerning Lilly's corporate operations or structure to ensure that an accurate opinion was rendered and they maintain that they did not discuss, in detail, the structuring plans for the David B. Lilly Co. CW & T maintains that, at Zalaznick's direction, it did not render an opinion, review an opinion which incorporated its advice, or incur cost. CW & T further maintains that it never billed nor was it paid for any discussions and that it was not significantly involved in the transaction. (D.I. 123 at 13 n. 7.)

Second, even if CW & T's participation was limited to only a general advisory role, there is conflicting evidence as to whether it was David Zalaznick who limited the scope of CW & T's involvement. Mr. Feeney's affidavit states that, when he telephoned Mr. Zalaznick to ascertain Jordan's expectations for CW & T's involvement, he was told that the defendants had been retained to perform both the tax and corporate work on the transaction and that CW & T was to only review the transaction and generally discuss the defendant Fisher's concerns. (D.I. 120 at A–90.) Feeney further states that he was told that the transaction was small and that Zalaznick did not want to incur the cost of having CW & T render an opinion on the small business set aside aspects of the proposed transaction. (D.I. 120 A–90.) Finally, he states that, from his prior work with Jordan, David Zalaznick knew that CW & T did not provide opinions on complicated issues raised in transactions without extensive investigation and analysis. (D.I. 120 A–90.)

On the other hand, David Zalaznick's deposition testimony states that he never had discussions with anyone from CW & T, thereby denying that the telephone conversation with Mr. Feeney ever took place. (D.I. 120 A–85; 128 at 15, 31.) The record also indicates that, even knowing of Fisher's lack of expertise, David Zalaznick trusted Fisher to ultimately protect Jordan's interests, regardless of how such protection was obtained. (D.I. 108 A–20, A–56, A–60, A–83; 120 A–28 to 31, A–48, A–84 to 87; 128 at 15, 31.) As a result of the contradictory evidence concerning the extent of CW & T's participation in the transaction and Zalaznick's direction or knowledge of any such limited involvement, there are also disputed issues of fact as to whether Zalaznick knew of any "weakness" in CW & T's advice or whether he should have prevented any reliance.

What Mr. Zalaznick told Mr. Feeney and what Mr. Zalaznick intended and expected from SFG & B and CW & T involves an assessment of credibility and the findings of fact from conflicting evidence. Thus, it would be inappropriate for this Court to grant a motion for summary judgment. Therefore, when all factual issues, and inferences therefrom, are resolved in the plaintiff's favor, there are genuine issues of material fact that are properly resolved only by a finder of fact. Accordingly, this Court finds that whether the statute of limitation should be tolled under Delaware law must be submitted to a jury.

## II. WHETHER PLAINTIFF REASONABLY RELIED UPON DEFENDANTS CREATES GENUINE ISSUE OF MATERIAL FACT

Again, the parties agree that Delaware law controls the issue of the David B. Lilly Company, Inc.'s reliance upon the defendants' legal services. (D.I. 107; 119; 122.) Under Delaware law, a client must prove three elements to recover for attorney malpractice: (1) employment of the attorney; (2) the attorney's neglect of a reasonable duty; and (3) proximate causation between the negligence and the injury. *Pusey v. Reed*, 258 A.2d 460 (Del.Super.1969). Also, any cause of action that a pre-merger company may have had against its attorney passes by law to the surviving corporation. 8 *Del.C.* § 259 (1991); *Heit v. Tenneco, Inc.*, 319 F.Supp. 884 (D.Del. 1970).

Defendants argue that the plaintiff cannot prove the necessary elements to recover for legal malpractice for two reasons: (1) Zalaznick limited the employment and duty of the defendants and, because these

actions are imputed to the surviving corporation, the first and second elements cannot be met; and (2) the pre-merger Lilly Co. did not retain the defendants and, in the absence of an attorney/client relationship with plaintiff, no cause of action will pass through to the surviving corporation. (D.I. 107; 122) Thus, the defendants argue that the plaintiff could not reasonably rely on any legal advice they allegedly gave concerning the SBA issue.

### A. *Lilly Holdings' Cause Of Action*

It is undisputed that David Zalaznick retained the defendants and that the defendants had an attorney/client relationship with both Jordan and Lilly Holdings. (D.I. 108 A–12, A–99, A–109; 120 A–19, A–21, A–51, A–210.) The dispute arises as to the scope of such employment and the resulting duty of care. The defendants assert that Zalaznick knew that they lacked expertise to render an opinion concerning compliance with the SBA regulations, that he limited the defendants' duty so that it would not include any such opinion, and that he arranged for CW & T to render an opinion to fulfill that aspect of the duty of care. Lastly, they contend that their duty cannot be expanded after the fact. Therefore, the defendants argue that the plaintiff cannot now sue because of this lack of expertise.

■ The Court agrees that the defendants' duty of care cannot be expanded after the fact. The plaintiff must be bound by the terms of agreement between defendant Fisher and his clients, David Zalaznick and Holdings, including any authorization for Fisher to rely on CW & T's advice. *Lewis v. Home Ins. Co.*, 314 A.2d 924, 926 (Del.Super.1973). But as discussed *supra*, the conflicting evidence in the record as to Zalaznick's actions and intentions creates genuinely disputed material issues of fact as to the scope of this duty.

If the jury finds that David Zalaznick, unbeknownst to defendants, prevented a complete legal analysis by the defendants then, not only will the action be barred by the statute of limitations, the defendants could not be deemed to have neglected a reasonable duty. If the jury finds that David Zalaznick did not prevent a complete legal analysis, necessarily finding that he was blamelessly ignorant, the undisputed employment of the defendants would give rise to a cause of action which would pass to the surviving corporation. The conflicting evidence must be presented to a jury and summary judgment must be denied.

### B. *Pre–Merger Lilly Co. Cause Of Action*

■ The plaintiff argues that defendant Fisher owed the pre-merger Lilly Co. a duty of care, separate and distinct from the duty owed to Jordan and Lilly Holdings. As support, plaintiff cites various inquiries, directives and requests by David Lilly, Sr. and various assurances given to David Lilly, Sr. by defendant Fisher. (D.I. 120 A–3 to 5, A–28 to 30(a), A–47 to 49, A–210.) The defendants claim that the pre-merger Lilly Co., solely owned by David B. Lilly, was the object of the transaction rather than a party to it. The company was the commodity bought and sold rather than a party to the sale. Thus, the defendants argue that the pre-merger Lilly Co. had no capacity to create an attorney/client relationship. The Court agrees with the defendants and finds no attorney/client relationship between the pre-merger Lilly Co. from which to support a cause of action.

Plaintiff maintains that it has a cause of action, even if the Lilly Co. was not an actual client, because the defendant expressly undertook to represent it. Under *Burke v. Frabizzio*, Del.Super.C.A. No. 80L–MR–21, Balick, J. (September 28, 1982), the court noted that a duty may be based on a gratuitous undertaking and that an attorney could be liable to a third party where he/she had express knowledge of the undertaking on behalf of the third party. The plaintiff contends that the defendants knew that David B. Lilly, Sr. was relying upon them for legal services and that defendants undertook representation on his behalf.

The evidence, however, does not show that the defendants expressly undertook to represent David B. Lilly, Sr. Mr. Lilly was

under the impression that it would be a "boilerplate" transaction and that any legal services that he retained would be a mere duplication of effort. The record shows that, given the shared interest between David Lilly, Sr. and Jordan, Mr. Lilly believed that retention of any counsel would be unnecessary and that he chose to forego counsel to represent him or the pre-merger company. However, even if the conflicting evidence offers more than a scintilla of evidence of an attorney/client relationship between Mr. Lilly and the defendants, the Court must again draw a distinction between David B. Lilly, Sr. and the pre-merger Lilly Co. The plaintiff offers no evidence that Mr. Lilly was acting on behalf of the corporation, as an officer of the corporation, rather than acting to protect his own proprietary interests.

■ Plaintiff also argues that the Lilly Co. was a third party beneficiary to the transaction. But even if the pre-merger Lilly Co. is deemed to be a third party beneficiary of the transaction, its rights are subject to the liability created and limitations imposed by the initial attorney/client relationship with Jordan and Lilly Holdings. Thus, if the jury finds that David Zalaznick limited the scope of the attorney/client relationship with defendant Fisher, so that the relationship would not include legal work concerning the SBA issue, then the defendants could not be deemed to have neglected a reasonable duty. If the jury finds that David Zalaznick did not prevent a complete legal analysis, the undisputed employment of the defendants by Jordan and Holdings would secure a cause of action which would pass to the surviving corporation. Therefore, consideration of plaintiff's third party beneficiary status is unnecessary.

■ Lastly, the plaintiff asserts a successor-in-interest argument. However, a corporation's reliance on a successor-in-interest status will require acceptance of the cause of action along with the accompanying knowledge and responsibilities. 8 *Del.C.* § 259 (1991). Again, because of the merger, the surviving corporation would be charged with David Zalaznick's knowledge

and directions. Therefore, the outstanding factual issues, discussed *supra,* would preclude a grant of summary judgment.

## CONCLUSION

Defendants' motion for summary judgment against David B. Lilly Company, Inc. will be denied.