IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ISN SOFTWARE CORPORATION, | § | |
| | § | No. 110, 2019 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N18C-08-016 |
| RICHARDS, LAYTON & FINGER, | § | |
| P.A., RAYMOND J. DICAMILLO | § | |
| and MARK J. GENTILE, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: December 11, 2019
Decided: February 17, 2020

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, Justices; and **NEWELL**, Chief Judge,* constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Christopher H. Lee, Esquire, Blake A. Bennett, Esquire, COOCH AND TAYLOR, P.A., Wilmington, Delaware; Timothy S. Perkins, Esquire, UNDERWOOD PERKINS, P.C., Dallas, Texas; Jeremy C. Martin, Esquire (*argued*), MARTIN APPEALS, PLLC, Dallas, Texas; *Attorneys for Plaintiff-Appellant ISN Software Corporation.*

P. Clarkson Collins, Jr., Esquire, Carl N. Kunz, III, Esquire, Kathleen A. Murphy, Esquire, MORRIS JAMES LLP, Wilmington, Delaware; George M. Kryder, Esquire (*argued*), Melissa L. James, Esquire, VINSON & ELKINS LLP, Dallas, Texas; *Attorneys for Defendants-Appellees Richards, Layton & Finger, P.A., Raymond J. DiCamillo, and Mark J. Gentile.*

_____

*Sitting by designation under Del. Const. Art. IV, § 12.

**SEITZ**, Chief Justice, for the majority:

For tax reasons ISN Software Corporation wanted to convert from a C corporation to an S corporation. But four of its eight stockholders, representing about 25 percent of the outstanding stock, could not qualify as S Corporation stockholders. ISN sought advice from Richards, Layton & Finger, P.A. about its options. RLF advised ISN that before a conversion ISN could use a merger to cash out some or all of the four stockholders. The cashed-out stockholders could then accept ISN's cash-out offer or exercise appraisal rights under Delaware law.

ISN did not proceed with the conversion, but decided to use a merger to cash out three of the four non-qualifying stockholders. After ISN completed the merger, RLF notified ISN that its advice might not have been correct. All four stockholders, including the remaining stockholder whom ISN wanted to exclude, were entitled to appraisal rights.

ISN decided not to try and unwind the merger. Instead, ISN proceeded with the merger and notified all four stockholders they were entitled to appraisal. ISN and RLF agreed that RLF would continue to represent ISN in any appraisal action. Three of the four stockholders, including the stockholder ISN wanted to exclude, eventually demanded appraisal. Years later, when things did not turn out as ISN had hoped—meaning the appraised value of ISN stock ended up substantially higher than ISN had reserved for—ISN filed a legal malpractice claim against RLF.

2

The Superior Court dismissed ISN's August 1, 2018 complaint on statute of limitations grounds. The court found that the statute of limitations expired three years after RLF informed ISN of the erroneous advice, or, at the latest, three years after the stockholder ISN sought to exclude demanded appraisal. On appeal, ISN argues that its legal malpractice claim did not accrue until after the appraisal action valued ISN's stock because only then could ISN claim damages.

Although we apply a different analysis, we agree with the Superior Court that the statute of limitations began to run in January 2013. By the time ISN filed its malpractice claim on August 1, 2018, the statute of limitations had expired. Thus, the Superior Court's judgment is affirmed.

I.

According to the allegations of the complaint, in 2012, ISN requested advice from RLF about converting from a C corporation to an S corporation. At the time, four ISN stockholders were not S corporation qualified and owned about 25 percent of ISN—stockholders A, B, C, and D. Of the 3,062 shares of stock outstanding, stockholder A owned 155 shares, B owned 190 shares, C owned 11 shares, and D owned 544 shares. Because stockholder D owned more than stockholders A, B, and C combined, RLF advised ISN that it could pursue a cash-out merger of some or all non-qualifying stockholders prior to converting to an S corporation. Any cashed-out stockholder would have the option either to accept ISN's cash offer or to seek

appraisal under Delaware law and have the Court of Chancery decide the fair value of the stock. ISN did not follow through with the conversion but, relying on RLF's advice, decided to cash-out only three of the four non-qualifying stockholders—A, B, and C. Stockholder D, who owned more stock than the three other stockholders combined, would remain a stockholder without appraisal rights. ISN completed the merger on January 9, 2013. ISN reserved $34 million for the buyout or appraisal award based on the cash-out offer of $38,317 per share.

On January 15, 2013, RLF "recognized [its] mistake" and notified ISN that all four of the non-qualifying stockholders could demand appraisal.[1] RLF and ISN discussed ISN's options—proceed and provide appraisal rights to all four stockholders,[2] or cancel the merger, which would create new liabilities. ISN decided to proceed with the merger. RLF agreed to litigate any appraisal action, and advised that the appraisal could also result in a lower valuation than the cash offer made to the stockholders. The next day, ISN informed the four stockholders of their appraisal rights. Stockholder A accepted the cash offer. The three other stockholders signaled that they might seek appraisal.

---

[1] App. to Opening Br. at A024-25 (Complaint 8–9 ¶ 23 (hereinafter "Compl.")). RLF denies that the transaction advice was incorrect. Answering Br. at 2 n.1. But at this stage, we consider the advice incorrect.

[2] It is unclear from the record whether the fourth stockholder had the option of accepting the cash-out offer.

RLF and ISN signed a conflict consent agreement letter in February 2013. It stated, in part:

> [t]he proposed representation creates a potential conflict under [Delaware Lawyers' Rules of Professional Conduct] Rule 1.7 because it may involve prior work of our firm, namely the advice (the "Advice") given concerning the availability of appraisal rights in connection with the merger . . . . Litigating issues arising from a law firm's prior legal work may generate a conflict of interest under the rule when there is a plausible claim that the firm's prior work was deficient . . . . It appears there may be an issue concerning the Advice.[3]

RLF believed that the "potential conflict" would not hinder its representation of ISN in the appraisal litigation because "the availability of appraisal rights is not likely to be at issue in an appraisal proceeding."[4] RLF also advised ISN that "[t]his is an important decision, and we suggest that [ISN] consider consulting independent counsel to assist it in deciding whether to consent."[5] The agreement concluded that "[n]either [ISN's] consent nor any other provision of this letter constitutes a waiver or release of potential causes of action [ISN] may have against the firm, if any."[6] ISN had independent counsel to advise it at the time.[7] ISN did not raise the possibility of a tolling agreement to preserve ISN's legal malpractice claim.

---

[3] App. to Opening Br. at A033 (signed conflict consent agreement).
[4] *Id.*
[5] *Id.* at A034.
[6] *Id.*
[7] *Id.* at A024–25 (Compl. 8–9 ¶¶ 22–24); First Oral Argument Video at 6:46–7:00, (Sept. 18, 2019), https://livestream.com/accounts/5969852/events/8821643/videos/196501986.

Three of the four stockholders filed for appraisal in April 2013. RLF represented ISN in the appraisal litigation. Over three years later, in August 2016, the Court of Chancery valued each ISN share at $98,783—resulting in a total appraisal value well in excess of the amount reserved for the buyout.[8] This Court affirmed.[9]

Several months later, ISN requested its entire file from RLF. RLF provided a portion of ISN's file, but declined to provide the entire file, including billing information around the time of the alleged negligent advice. After RLF's counsel declined to produce further documents, on August 1, 2018, ISN filed suit against RLF for legal malpractice relating to its advice concerning the merger and appraisal rights.

RLF moved to stay discovery and to dismiss ISN's complaint on statute of limitations grounds. The Superior Court granted RLF's motion to stay and later its motion to dismiss.[10] According to the court, to decide when the action accrued for statute of limitations purposes, the "test is when the malpractice was discernable by a reasonably diligent plaintiff."[11] The court found that ISN had actual notice of the

---

[8] *In re ISN Software Corp. Appraisal Litig.*, 2016 WL 4275388 (Del. Ch. Aug. 11, 2016).
[9] *ISN Software Corp. v. Ad-Venture Capital Partners, L.P.*, 173 A.3d 1047, 2017 WL 4875881 (Del. Oct. 30, 2017) (TABLE) (affirming on the basis of and for the reasons assigned by the Court of Chancery).
[10] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 2019 WL 670083, at *4 (Del. Super. Feb. 18, 2019).
[11] *Id.* at *2.

6

disputed advice and its erroneous nature on January 15, 2013. By that date, ISN knew, or should have known, "of the potential for financial loss if the appraisal action resulted in a share valuation that would exceed" its cash reserves.[12] As a result, the cause of action accrued on the date that RLF informed ISN of the alleged negligent advice or, alternatively, when the appraisal action was filed in April 2013. Thus, the claim expired under the statute of limitations no later than April 2016. Because ISN did not file a malpractice suit until August 2018, the Superior Court dismissed the suit.

## II.

On appeal we review *de novo* whether a claim is barred by a statute of limitations.[13] We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of ISN.[14]

## A.

Statutes of limitations "establish jurisdictional prerequisites for initiating or maintaining a suit."[15] Although they are, "by their nature, harsh,"[16] they attempt to

---

[12] *Id.* at *3.

[13] *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1274 (Del. 2016).

[14] *Shea v. Delcollo and Werb, P.A.*, 977 A.2d 899, 2009 WL 2476603, at *2 (Del. Aug. 13, 2009) (TABLE).

[15] *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 920 (Del. 2004) (quoting *Mary A.O. v. John J.O.*, 471 A.2d 993, 995 n.4 (Del. 1983)); *see* 51 Am. Jur. 2d *Limitation of Actions* § 9 (Nov. 2019) ("Statutes of limitation serve as instruments of court management, and promote judicial economy or judicial efficiency.") (internal citations omitted).

[16] *Scharf*, 864 A.2d at 920 (internal quotations omitted).

balance a plaintiff's right to seek a remedy with a defendant's right to avoid defending stale claims.[17]

Under 10 *Del. C.* § 8106(a), a legal malpractice claim must be filed within "3 years from the accruing of the cause of such action." The parties dispute when ISN's cause of action accrued. According to ISN, its legal malpractice claim did not accrue until after it suffered damages when this Court affirmed the Court of Chancery's appraisal award.

A cause of action "accrues" for statute of limitations purposes based on distinct triggering events. Some states accrue a cause of action when damages have been suffered or are ascertainable.[18] Other states accrue a cause of action at the time of loss.[19] Delaware, by contrast, declined to adopt these or other alternatives.[20] Instead, Delaware is an "occurrence rule" jurisdiction, meaning a cause of action accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause

---

[17] *See* Melissa DiVincenzo, *Repose vs. Freedom – Delaware's Prohibition on Extending the Statute of Limitations by Contract: What Practitioners Should Know*, 12 Del. L. Rev. 29, 30 (2010); 51 Am Jur. 2d *Limitation of Actions* § 5 (Nov. 2019) ("Statutes of limitation are intended to promote the timely and efficient litigation of claims, and further the policy that one must diligently pursue one's legal rights at the risk of losing them if they are not timely asserted.") (internal citations omitted).

[18] Ronald E. Mallen, 3 Legal Malpractice § 23:23 (2020 ed.); *see, e.g.*, *Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1071 (Cal. 1998) ("The test for actual injury . . . is whether the plaintiff has sustained any damages compensable in an action[] . . . .").

[19] *See* Mallen, 3 Legal Malpractice § 23:33 (2020 ed.) (noting that in some jurisdictions, "[t]he loss of a right, remedy or property interest, or the imposition of a liability is the injury").

[20] *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 834 (Del. 1992) (declining to adopt time of loss rule).

of action."[21]  In Delaware, for contract claims, the wrongful act occurs at the time a contract is breached.  For tort claims, like the legal malpractice claim here, the wrongful act occurs at the time of injury.[22]  Stated another way, "[a] cause of action in tort accrues at the moment when 'an injury, although slight, is sustained in consequence of the wrongful act of another.'"[23]

Because of the harshness of the occurrence rule when a plaintiff is ignorant of the malpractice, this Court has applied a limited "time of discovery" exception to toll the time of accrual.  "Under the 'discovery rule' the statute is tolled when the

---

[21] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004); *see Shea*, 2009 WL 2476603, at *2 ("The statute of limitations begins to run upon the commission of the act or omission giving rise to the cause of action."); *SmithKline Beecham Pharms. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 450 (Del. 2000) (Section 8106 "is not a 'discovery statute,' and the limitations period begins to run from the time the cause of action accrues."); *Kaufman*, 603 A.2d at 834 (Under § 8106, "[i]n general, a cause of action accrues with the occurrence of the wrongful act."); *Isaacson, Stolper & Co. v. Artisans' Sav. Bank*, 330 A.2d 130, 132 (Del. 1974) ("The general law . . . is that the statute of limitations [under § 8106] . . . begins to run at the time of the wrongful act, and, ignorance of a cause of action, absent concealment or fraud, does not stop it.").

[22] *Kaufman*, 603 A.2d at 834; *see Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032 (Del. Ch. Jan. 24, 2005) ("The 'wrongful act' is a general concept that varies depending on the nature of the claim at issue.  For breach of contract claims, the wrongful act is the breach, and the cause of action accrues at the time of breach.  For tort claims, the wrongful act is a tortious act causing injury, and the cause of action accrues at the time of injury.  Where the claim is one for indemnification or contribution for damages paid to a third party, a cause of action accrues only after the party seeking indemnification has made payment to the third party.") (citations omitted).

[23] *Kaufman,* 603 A.2d at 834 (quoting 51 Am. Jur. 2d *Limitation of Actions* § 135) (interpreting 10 *Del. C.* § 8106).  We agree with our colleague in dissent that the Superior Court erred when it found that the mere exposure to the risk of loss or the potential for damages triggers the statute of limitations.  But we also note that the time of injury was raised on appeal and is based on undisputed facts. *See, e.g.*, Answering Br. at 16 ("The moment Stockholder D acquired appraisal rights, . . . ISN was injured.").  Our colleague in dissent also argues for an additional requirement beyond injury—the plaintiff must be able to plead damages.  Although damages are an element of a legal malpractice claim, this Court has never treated it as relevant to when the statute of limitations begins to run.  And, as explained later, that additional requirement would not change the outcome of this appeal.

9

injury is 'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'"[24]  Otherwise, "[i]gnorance of the cause of action will not toll the statute[] absent concealment or fraud."[25]  Outside these exceptions, the statute of limitations continues to run even if the claimant is unaware of the facts supporting a cause of action.[26]

## B.

Turning to the facts alleged in ISN's complaint, the circumstances surrounding the alleged faulty advice appear undisputed.  RLF advised ISN that it could complete a cash-out merger of less than all of the non-qualifying stockholders, and the stockholder(s) left behind would not have appraisal rights.  ISN completed the merger on January 9, 2013 to cash-out only three of the four non-qualifying stockholders.  On January 15, 2013, RLF notified ISN that its advice could have been faulty.  All of the non-qualifying stockholders were entitled to demand appraisal.  Three of the four stockholders, including the stockholder ISN wanted to

---

[24] *Wal-Mart Stores, Inc.*, 860 A.2d at 319 (quoting *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004)).

[25] *Coleman*, 854 A.2d at 842.  There are other tolling exceptions not applicable here.  *See Oropeza v. Maurer*, 860 A.2d 811, 2004 WL 2154292, at *1 (Del. 2004) (TABLE) (including infancy and incapacity).

[26] *Shea*, 2009 WL 2476603, at *2  ("The statute of limitations begins to run even if the aggrieved party is unaware of the injury . . . ."); *see also Conaway v. Griffin*, 970 A.2d 256, 2009 WL 562617, at *2 (Del. 2009) ("[I]gnorance of the facts constituting a cause of action is no obstacle to the operation of the statute."); *Isaacson*, 330 A.2d at 132 ("[G]enerally [] ignorance of the facts is in the ordinary case no obstacle to the operation of a statute of limitations.") (quoting *Mastellone v. Argo Oil Corp.*, 82 A.2d 379, 383 (Del. 1951)).

exclude, demanded appraisal. Thus, the question is when ISN suffered injury, no matter how slight, when RLF gave the alleged faulty advice.

We find that the injury occurred to ISN when the fourth stockholder—the largest of the group—obtained the right to demand appraisal. The transaction as intended contemplated cashing out three stockholders who owned a total of 356 shares, and excluding a fourth who owned 544 shares and would not have appraisal rights. Because of RLF's alleged faulty advice, ISN ended up allowing the fourth stockholder to demand appraisal, meaning ISN could be liable to pay fair value for 544 more shares of stock than contemplated by the intended transaction.[27] And, when stockholders B, C, and D filed for appraisal, ISN knew that the Court of Chancery would award the fair value of 745 shares of ISN stock—far more than the 356 shares at risk of appraisal by the intended transaction. Thus, under any circumstances, ISN was liable to pay the fair value of more stock than planned, which injured ISN financially.

Our injury determination is consistent with earlier decisions of this Court. For instance, in *Shea v. Delcollo and Werb, P.A.*,[28] the plaintiff hired a law firm to assist in refinancing her mortgage to remove her ex-husband from the property deed. With

---

[27] It appears that ISN did not offer to cash-out the fourth stockholder, although the briefing is unclear. But if it did, the injury was greater because ISN knew it would have to buy out more stockholders than intended regardless of appraisal.

[28] 2009 WL 2476603, at *1.

the firm's help, the plaintiff refinanced and recorded a new mortgage, but, unknown to her, the ex-husband's name remained on the deed.[29]  Several years later, the plaintiff discovered the error.[30]  She sought to partition the property and, after paying to remove a lien against her ex-husband, removed his name from the deed.[31]  Then she filed a legal malpractice claim against the law firm.[32]  This Court found that she was injured at the time of the refinancing because she relied on the attorney's expertise to remove her ex-husband's name, and the refinancing transaction failed to accomplish that goal.[33]  The statute of limitations was tolled, however, because she was "blamelessly ignorant of her inherently unknowable claim until she discovered the injury."[34]

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at *2.

[34] *Id.* at *3.  Similarly in *Isaacson*, the plaintiff's accountants, unknown to the plaintiff, made improper filings to the IRS in 1962.  330 A.2d at 131–32.  The IRS notified the plaintiff of the deficiency in 1967, which the plaintiff eventually settled.  *Id.* at 131.  Regarding its malpractice claim, this Court found that the original act giving rise to the claim—the improper filing—was "inherently unknowable" until the IRS provided notice, implying that the improper filing was the injury sufficient for the cause of action to accrue.  *Id.* at 132–33.  And in *Kaufman*, the plaintiffs purchased an insurance policy intending to include coverage for loss of use, but it did not.  603 A.2d at 833.  After a fire damaged the property and the plaintiffs pursued an unsuccessful insurance claim, they filed a professional negligence claim against their insurance broker for procuring the wrong insurance policy.  *Id.*  The Court found that "[i]f the [plaintiffs] were injured due to the [defendant's] negligence," "that injury first occurred at the moment [the plaintiffs] entered into a contract which obligated them to pay a premium for stated coverage which was not the coverage they desired."  *Id.* at 834.  Thus, the Court determined that the cause of action accrued, and the statute of limitations began to run, at the time of delivery of the policy.  *Id.*

In *Shea*, the injury occurred when the plaintiff found herself in an unintended situation as a result of the alleged negligence, even if the recoverable damages were uncertain.[35] Here, as a result of acting on the alleged negligent advice, ISN found itself in an unintended position when all four stockholders could demand appraisal. The transaction as executed injured ISN because it brought unintended consequences that could not be revoked without cost. ISN's options were to cancel the merger, which created new legal liabilities, or proceed with the transaction and provide more appraisal rights than planned.[36]

ISN argues that the cause of action cannot accrue until it could state a claim, whether for injunctive relief[37] or for damages,[38] and damages were not certain until the Court of Chancery's appraisal decision exceeded its reserve amount.[39]

---

[35] 2009 WL 2476603, at *2. In *Isaacson*, the Court implied that the cause of action accrued when the improper filing occurred, even though the plaintiff contested the tax deficiency. 330 A.2d at 132. And in *Kaufman*, the cause of action accrued when the plaintiff paid for the contract, even though damages resulting from the missing contract coverage would not arise until later. 603 A.2d at 834.

[36] The injury occurred on the date of the transaction. Like the plaintiff in *Shea*, however, ISN was arguably "blamelessly ignorant" of the "inherently unknowable" injury until RLF notified ISN of a potential mistake on January 15, 2013. The less than one week difference between the transaction closing date (January 9, 2013) and the date RLF gave notice (January 15, 2013) is immaterial to our decision because the three-year statute of limitations had long run out by the time ISN filed its complaint (August 1, 2018). *See Isaacson*, 330 A.2d at 133 ("[I]n cases of professional malpractice, postponement of the period of limitations until discovery finds justification in the special nature of the relationship between a professional person and client.").

[37] *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085 (Del. Ch. June 29, 2005) (finding that plaintiff could have sought injunctive relief at the time of the wrongful act).

[38] *See Tarrant v. Ramunno*, 171 A.3d 138, 2017 WL 3725068, at *2 (Del. Aug. 29, 2017) (TABLE) (finding that to state a legal malpractice claim, a plaintiff must allege and prove a "resulting loss").

[39] *See* Second Oral Argument Video at 4:30 – 6:12 (Dec. 11, 2019), https://livestream.com/accounts/5969852/events/8915746/videos/199789790 ("[W]e didn't know

According to ISN, it suffered no damages at the time of the merger because the costs to litigate an appraisal proceeding were the same regardless of the number of shares seeking appraisal, and if the total appraised value of the stock did not exceed the amount it had set aside to cover its expenses, it would not incur damages.[40]

ISN has failed to distinguish between an injury sufficient for a cause of action to accrue and damages that ISN could have sought in the malpractice action. Under the Delaware occurrence rule, injury is distinct from damages. The statute of limitations can start to run before any "actual or substantial damages" occur.[41] Here, the unintended consequences of the merger injured ISN when the transaction closed because it could not proceed without new liabilities—providing additional appraisal rights than intended or unwind the merger. ISN's legal malpractice suit was not subject to dismissal for being premature. Once injured, ISN could have brought a

---

whether the cost of that merger would exceed $34 million until the appraisal decision and until you exceeded the $34 million buyout reserve there was no resulting loss . . . ."). Keeping the appraisal within the amount allotted was a business goal irrelevant to when ISN was injured by the alleged erroneous advice. App. to Opening Br. at A019-20 (Compl. 3–4 ¶¶ 6–11).

[40] Opening Br. at 17–18 (citing *Balinski v. Baker*, 2013 WL 4521199, at *3 (Del. Super. Aug. 22, 2013) (finding that the "mere breach of professional duty, causing only . . . speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence") (citation omitted)).

[41] *Kaufman*, 603 A.2d at 834 ("[T]he running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.") (citations omitted); *see* 51 Am. Jur. 2d *Limitation of Actions* § 130 (Nov. 2019) ("[A] direct injury, however slight, may start the statute of limitations . . . . It is sufficient if nominal damages are recoverable for the breach or for the wrong . . . .") (citations omitted).

legal malpractice claim and the court could have stayed the litigation until the extent of damages was certain.[42]

ISN also argues that public policy supports finding that the statute of limitations did not begin to run until the appraisal decision. According to ISN, finding that the cause of action accrued before the appraisal award would subject it to a host of difficulties and inefficiencies. It would have had to find new counsel for the appraisal litigation. It would have created an actual conflict with RLF. And it would have required ISN to file a potentially unripe claim, or forgo the mitigation of damages from appraisal. All those points might have some validity, but are arguments in support of possible amendments to the Delaware statute as other states have done.[43] Under the current state of Delaware law, however, regardless of complications, inefficiencies, and possible unfairness, a cause of action accrues at the time of the wrongful act, which in this case means when injury occurred and not when damages were certain.[44]

---

[42] Mallen, 3 Legal Malpractice § 23:25 (2020 ed.) (identifying a "concern about the amount of damage or its apparent actuality. . . . Whether a lawyer has erred or the client has suffered injuries are factors that typically are litigated in a legal malpractice action. The inefficiency of litigating a legal malpractice action where those issues are uncertain can be avoided by tolling agreements or by staying the legal malpractice action.") (citations omitted).

[43] California courts, for example, applied the occurrence rule, then the discovery rule, until the state legislature adopted the discovery rule with an occurrence rule providing an outer limit. Mallen, 3 Legal Malpractice § 23:22 (2020 ed.).

[44] We note that, even if we apply the dissent's suggested change to the injury rule, the undisputed facts alleged in the complaint show that an injury occurred and damages could be alleged in January 2013. RLF advised ISN that it did not have to offer appraisal rights to the fourth, and largest, minority stockholder. When that turned out not to be the case, and the fourth stockholder

C.

ISN also argues that its case should not have been dismissed before the court ordered RLF to turn over its entire file to ISN. As ISN argues, access to the entire file would allow ISN "to analyze the veracity and intentions of RLF's advice" after it "admitted its mistake."[45] The entire file, the argument goes, might have supported a fraudulent concealment claim or equitable tolling.

ISN is correct that concealment or fraud can toll the statute of limitations.[46] But to resist RLF's motion to dismiss on these grounds, ISN had to plead sufficient facts in support of the claims.[47] The Superior Court correctly found that access to RLF's file would not have changed what was actually pleaded in the complaint— that RLF informed ISN of its problematic advice. Because ISN had notice of the alleged negligent advice, nothing in RLF's file would aid ISN in attempting to toll the statute of limitations.

ISN also argues that RLF fraudulently concealed the existence of a cause of action because it allegedly agreed in the consent agreement that no cause of action

---

demanded appraisal, ISN became liable to pay the fair value of the fourth stockholder's stock— something it was not obligated to do absent the faulty legal advice.

[45] Opening Br. at 3.

[46] *Coleman*, 854 A.2d at 842; *see also Oropeza*, 2004 WL 2154292, at \*1 (including infancy and incapacity as reasons for tolling the statute of limitations).

[47] *See Oropeza*, 2004 WL 2154292, at \*1 (finding that the plaintiff did not sufficiently plead the tolling of the statute of limitations).

existed at the time.[48] Even if ISN had pleaded fraud with particularity,[49] which it has not, the RLF/ISN agreement cannot be reasonably interpreted as misleading. RLF wrote that "[l]itigating issues arising from a law firm's prior legal work may generate a conflict of interest . . . when there is a plausible claim that the firm's prior work was deficient," and that "there may be an issue concerning the" transaction advice.[50] RLF concluded by stating that the agreement did not waive any "potential causes of action [that ISN] may have against [RLF]."[51] When combined with the recommendation to seek independent counsel on this "important decision,"[52] which ISN did, the only reasonable inference is that the agreement provided notice to ISN that there may be a then-present claim for legal malpractice. Because ISN was on notice of the facts and possibility of a legal malpractice claim, the allegations of the complaint do not lead to an inference that RLF engaged in fraudulent or misleading conduct about problems with its advice.

## III.

On January 15, 2013, RLF put ISN on notice of a potential legal malpractice claim. RLF's problematic advice led ISN to complete a cash-out merger that

---

[48] ISN also argues that its post-merger advice was potentially influenced by an improper motive and not in ISN's best interest, for which ISN sought the entire file. But even if that was well-pleaded, it does not toll the statute of limitations because it does not allege that RLF fraudulently concealed the existence of a claim.
[49] Super. Ct. Civ. R. 9(b).
[50] App. to Opening Br. at A033.
[51] *Id.* at A034.
[52] *Id.*

17

allowed a stockholder it intended to exclude to demand appraisal. Instead of entering into a tolling agreement to preserve its malpractice claim, ISN, with the advice of independent counsel, decided to proceed with the merger and give appraisal rights to all four stockholders. When the appraised value of ISN stock exceeded what ISN expected to pay, ISN sued RLF for legal malpractice. Unfortunately, under Delaware law, ISN's legal malpractice claim accrued in January 2013, when ISN was injured by RLF's allegedly faulty advice. The statute of limitations expired in January 2016. The Superior Court properly dismissed ISN's August 1, 2018 complaint as time-barred. The judgment of the Superior Court is affirmed.

18

**VAUGHN**, Justice, dissenting:

The rule that a cause of action generally accrues upon the occurrence of a wrongful act is subject to the accompanying rule that a cause of action in tort accrues at the time of injury. Where legal negligence is involved, the client may or may not suffer injury because of such negligence. Fortunately, some legal negligence is resolved, or resolves itself, without the client experiencing any injury. In this case, the Majority finds that ISN suffered injury when the fourth stockholder obtained the right to demand appraisal upon consummation of the merger.

The Superior Court did not rule that ISN suffered injury when the fourth stockholder obtained appraisal rights. In its opinion, the Superior Court ruled that:

> A cause of action for professional malpractice accrues as soon as the wrongful act occurs. It does not matter that at the time of the negligent act, the client has not yet suffered a loss. Exposure to the risk of loss is sufficient injury to create an actionable claim for application of the statute of limitations.[1]

Later in its opinion, the Superior Court added that:

> Plaintiff's cause of action against the Defendants accrued on the date Plaintiff explicitly was informed of Defendants' erroneous advice – January 15, 2013. At the very latest, the statute of limitations began to run as of the filing of the appraisal action in the Court of Chancery. At that time, Plaintiff was aware of the potential for damages (appraisal in excess of the Buyout Reserve), even though there was not yet a determination of the precise measure

---

[1] Opening Br. Ex. A at 6 (footnote omitted).

of damages, or even whether damages ultimately would be suffered.[2]

In other words, the Superior Court ruled that the statute began to run when the alleged malpractice occurred creating an exposure to a risk of loss or potential for damages. In *Kaufman v. C.L. McCabe & Sons, Inc.,* however, this Court ruled that "[a] cause of action in tort accrues at the moment when 'an injury, although slight, is sustained in consequence of the wrongful act of another.'"[3] I believe that the Superior Court erred when it ruled that mere exposure to the risk of loss or the potential for damages is sufficient to start the running of the statute of limitations. The plaintiff must sustain some actual injury before the cause of action accrues. As explained in *Kaufman*, it is not required that all, or even most, of the damages occur at that time, but there must be some actual injury to start the clock for statute of limitations purposes.[4] An exposure to risk of loss or potential for damages is not sufficient. Because of the manner in which the parties framed the issues in the Superior Court, the court did not discuss whether the fourth stockholder's acquisition of appraisal rights, in and of itself, injured ISN.

In *Kaufman,* the plaintiffs owned a residence in Fenwick Island. They took out a policy of insurance on the residence from the defendant which was supposed to include loss of use coverage. The premium the plaintiffs paid included a premium

---

[2] *Id.* at 7-8.
[3] 603 A.2d 831, 834 (Del. 1992) (quoting 51 AM. JUR. 2d *Limitation of Actions* § 135).
[4] *See id.*

2

for loss of use coverage. The insurance agent, however, failed to include loss of use coverage in the policy. Several years later, a fire occurred, and the insurance company denied the plaintiffs' claim for loss of use. The Kaufmans brought suit alleging negligence on the part of the insurance agency in selling them a policy of insurance that did not comply with their request, that is, one that did not include loss of use coverage. As the Court summarized, the Kaufmans "contend[ed] that a cause of action against an agent-broker for the negligent procurement of insurance coverage does not accrue until the insured suffers some loss for which it is not covered. They argue[d] that it was only then that the insured has really suffered injury."[5] The Court noted that several jurisdictions appeared to have adopted such a rule, citing three insurance cases from other jurisdictions.[6] This Court rejected that rule and held that the plaintiffs were injured, and the cause of action accrued, at the time the policy was issued.[7]

In doing so, the Court adopted the rule from *American Jurisprudence* 2d that "[a] cause of action in tort accrues at the moment when 'an injury, although slight, is sustained in consequence of the wrongful act of another.'"[8] Continuing, the Court quoted, ''[i]t is not required that all the damages resulting from the act shall have

---

[5] *Id.*
[6] *Id.* (citing Ohio, Pennsylvania, and Georgia decisions).
[7] *Id.*
[8] *Id.* (quoting 51 AM. JUR. 2d *Limitations of Actions* §135).

been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date."[9] The Court also found the Kaufmans had a remedy when the policy was issued: "[i]f [the insured] had discovered the omission which was apparent on the face of their policy, they could have pursued [the insurance agency] for the difference in value between a policy which included the requested coverage and the value of the policy as issued."[10] And "[t]he Kaufmans could have asserted the claim they now assert from the date on which [the insurance agency] procured their insurance policy and delivered it to them."[11] When the Kaufmans' cause of action accrued, they could plead all elements of their claim—damages included.[12]

---

[9] *Id.* (quoting 51 AM. JUR. 2d *Limitations of Actions* §135).

[10] *Id.* (first alteration added) (citation omitted).

[11] *Id.*

[12] I would note also that *Shea v. Delcollo & Werb, P.A.*, 977 A.2d 899, 2009 WL 2476603 (Del. Aug. 13, 2009) (Order), and *Isaacson Stolper & Co. v. Artisan's Savings Bank*, 330 A.2d 130 (Del. 1974), are time of discovery cases. In *Shea v. Delcollo & Werb, P.A.*, the legal negligence was the attorney's failure to obtain a deed from the plaintiff's former husband that removed his name from property so that the property would be in the plaintiff's name alone. 2009 WL 2476603, at *1. This failure occurred in connection with a refinancing undertaken by the plaintiff. As a result of the attorney's negligence, the former husband's name did not appear on a new mortgage executed by the wife, but it did remain on the property. The attorney's error was discovered during a second refinancing. This Court held that the statute of limitations began to run when the attorney committed the negligent act. *Id.* at *2-3. It also held that "[i]f the [time of discovery] exception applies, the statute of limitations will not begin to run on the plaintiff's claim until the 'discovery of facts "constituting the basis of the cause of action."'" *Id.* at *2. When the attorney's negligence was discovered, and the statute began to run, it appears that the plaintiff could plead all elements of a cause of action, including damages. In *Isaccson Stolper & Co. v. Artisan's Savings Bank* the cause of action arose out of an accountant's error which resulted in increased taxes to the plaintiff. *Isaacson*, 330 A.2d at 131. The Court found that "the statute of limitations began to run when the plaintiff received first notification from IRS of its 'statutory deficiency.'" *Id.* at 134. When that

I would find that the statute of limitations begins to run when the plaintiff sustains an injury for which the law affords a remedy. More specifically, I would find as follows:

> A tort claim accrues for limitations purposes when it becomes enforceable, that is, when all elements of the tort can be truthfully alleged in a complaint, and accordingly, when damage is an essential element of a tort, the claim does not accrue at the time of the defendant's wrongful act or the plaintiff's discovery of the injury, but when the harm is sustained.[13]

The above-quoted text is subject to the qualification endorsed in *Kaufman* that "it is not required that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date."[14]

---

occurred, it appears that the plaintiff could plead all of the elements of its cause of action, including damages.

[13] 51 AM. JUR. 2d *Limitation of Actions* § 146 (Jan. 2020). The time of discovery rule is discussed in other sections.

[14] *See* 603 A.2d at 834 (quoting 51 AM. JUR. 2d *Limitation of Actions* § 135). According to 51 AM. JUR. 2d *Limitation of Actions* § 130 (Nov. 2019), "[a] cause of action does not accrue for the purposes of a statute of limitations until all the elements are present, including damages, however trivial." (footnote omitted). The 2020 update provides the same. *See* 51 AM. JUR. 2d *Limitations of Actions* § 130 (Jan. 2020). In addition to 51 AM. JUR. 2d *Limitation of Actions* § 146 (Jan. 2020), which I quote in the text, *see, e.g.*, 54 C.J.S. 2d *Limitations of Actions* § 131 (Dec. 2019) ("Where an injury, although slight, is sustained in consequence of the wrongful act of another, *and the law affords a remedy therefore*, the statute of limitations attaches at once; it is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not postponed by the fact that actual or substantial damages do not occur until a later date.") (emphasis added); *see also Gellert Scali Busenkell & Brown, LLC v. Country Life Homes*, 2019 WL 6876805, at *2 (Del. Super. Dec. 16, 2019) ("Delaware law has established that to succeed on a claim for legal malpractice, the plaintiff must establish the following elements: a) the employment of the attorney; b) the attorney's neglect of a professional obligation; and c) resulting loss. To establish the third element, 'the plaintiff must demonstrate that the underlying action

5

This case has not followed a straight path.  As mentioned, the question upon which the appeal is being decided—when did ISN sustain injury—was not addressed by the Superior Court.  The questions presented as framed by the parties in their briefs bear little resemblance to the question the Majority now answers.  It appears that RLF may not have believed in 2013 that a cause of action against it accrued when the fourth stockholder obtained the right to demand appraisal.  In its February 14, 2013 letter, RLF represented to its client that ISN had only "potential causes of action" against the law firm.[15]  To ensure the parties have been fully and fairly heard on the question which has emerged during this appeal—when was ISN injured—I would reverse the judgment of the Superior Court for the error which I discuss above and remand the case for further proceedings in that court, including proceedings to determine when ISN sustained an injury for which the law afforded a remedy.

---

would have been successful but for the attorney's negligence.' *To establish this element 'an attorney must cause more than speculative damage to a plaintiff,' and '[e]ven when proven or obvious, "[t]he mere breach of professional duty, causing only . . . speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence."'"*) (emphasis added) (footnotes omitted).

[15] App. to Opening Br. at A33-34.