# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JONATHAN SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-05-120 |
| | ) | PRW CCLD |
| LIGHTWAVE LOGIC, INC. and | ) | |
| BROADRIDGE FINANCIAL | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: July 19, 2024
Decided: October 17, 2024

*Upon Plaintiff's Motion to Strike,*
**GRANTED.**

*Upon Defendants' Motion for Summary Judgment,*
**GRANTED.**

*Upon Plaintiff's Request for a Jury Trial,*
**DENIED as MOOT.**

## MEMORANDUM OPINION AND ORDER

Barnaby Grzaslewicz, Esquire (*argued*), Albert H. Manwaring, IV, Esquire, Kirsten A. Zeberkiewicz, Esquire, MORRIS JAMES LLP, Wilmington, Delaware, *Attorneys for Plaintiff Jonathan Saunders*.

Joseph C. Schoell, Esquire (*argued*), FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, Delaware; Steven L. Caponi, Esquire, Matthew B. Goeller, Esquire, Megan E. Hunt, Esquire, K&L GATES LLP, Wilmington, Delaware, *Attorneys for Defendants Lightwave Logic, Inc. and Broadridge Financial Solutions, Inc.*

**WALLACE, J.**

All statutes of limitation are, "by their very nature, harsh."[1] Each arbitrarily establishes a jurisdictional deadline for initiating a lawsuit.[2] And as creatures of the legislative process each is, in effect, a sensible but imperfect "attempt to balance a plaintiff's right to seek a remedy with a defendant's right to avoid defending stale claims."[3] In the norm, ignorance of the facts giving rise to a cause of action won't toll such a statute.[4] To tame their harshness and promote fairness, the law has long-recognized certain special circumstances—infancy, incapacity, fraud, concealment—that can interrupt these statutes' running and blunt this attendant rule's effect.[5] Also among these tollers now is the inherently unknowable injury exception.[6] But it, like the others, is available only "in certain narrowly carved out limited circumstances."[7] And this case does not present any such circumstance. The plaintiff here can't save this suit because the inherently unknowable injury exception just isn't available for the injury alleged in his negligence and conversion claims.

---

[1]  *Mary A.O. v. John A.O.*, 471 A.2d 993, 995 n.4 (Del. 1983) (cleaned up).

[2]  *Id.*

[3]  *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020); *see also Nat'l Iranian Oil Co. v. Mapco Int'l Inc.*, 983 F.2d 485, 493 (3d Cir. 1992) (observing that a statute of limitations also protects the court by relieving it of the burden of adjudicating a stale claim where a plaintiff has delayed asserting his rights).

[4]  *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004).

[5]  *Mastellone v. Argo Oil Corp.*, 82 A.2d 379, 383 (Del. 1951).

[6]  *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998) (describing the inherently unknowable injury tolling exception).

[7]  *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2016 WL 4440476, at *15 (Del. Ch. Aug. 22, 2016).

His suit was filed too late and the Defendants' motion for summary judgment to terminate it must be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE ESCHEATMENT

Plaintiff Jonathan Saunders, a plastic surgeon residing in Delaware,[8] seeks redress for the 2017 escheatment of his stock in Defendant Lightwave Logic, Inc.[9] Dr. Saunders charges that Lightwave and its transfer agent, Defendant Broadridge Financial Solutions, Inc., committed alleged acts of negligence and conversion when relinquishing that stock to the State of Delaware. And these misdeeds, he says, caused him to lose more than a million dollars.[10]

On July 8, 2013, Dr. Saunders acquired 55,000 pink-sheet shares of Lightwave for $55,000.[11] At the time, he lived on Belmont Drive in Wilmington and received his Lightwave stock certificate there via regular mail delivery.[12] Dr. Saunders recounted that he attempted to open a brokerage account for his

---

[8] Defendants' Joint Opening Brief in Support of Motion for Summary Judgment ("Defs.' Opening Br. in Supp. of Mot. for Summ. J.") Ex. A ("Saunders Dep."), at 6 (D.I. 67).

[9] *See generally* Complaint ("Compl.") (D.I. 1).

[10] Compl. ¶¶ 55, 61.

[11] Compl. ¶ 12; Saunders Dep. 17. "Pink sheets" is a colloquial term that is still widely used for stocks that trade over-the-counter rather than on a major public U.S. stock exchange (*e.g.*, the NYSE or NASDAQ). Most pink-sheet stocks are highly speculative and are generally considered risky in comparison with listed stocks. *See* Chris B. Murphy, *Pink Market: Listings for Stocks That Trade Over-the-Counter*, INVESTOPEDIA (July 21, 2024), www.investopedia.com/terms /p/pinksheets.asp (last visited Oct. 15, 2024).

[12] Saunders Dep. 20.

Lightwave shares, but no firm would open an account for these over-the-counter market shares.[13]

Within a year of that purchase, Dr. Saunders moved to a new Wilmington residence.[14] He never informed, nor even considered informing, Lightwave (or Broadridge) of this move from his Belmont Drive address.[15] But Dr. Saunders reports that his family did have the U.S. postal service forward their mail to their new address for at least a year and that he did notify his broker, utility companies, and his general banking institution of his change of address.[16]

Without a brokerage account, Dr. Saunders kept his stock certificate in a home safe.[17] He then monitored his Lightwave shares via Google and through occasional country club chats with individuals including a former Lightwave board member, Lightwave's CEO, and Lightwave's COO.[18] These conversations were always

---

[13] Saunders Dep. 10; Compl. ¶ 12. Dr. Saunders held several other over-the-counter stocks in addition to his Lightwave shares. Saunders Dep. 7–10.

[14] Saunders Dep. 20–23; Compl. ¶ 18.

[15] *See* Saunders Dep. 25–26.

> Q: [A]fter you moved in 2014, you didn't notify Lightwave Logic of your new address?
> A: I did not.
> Q: And that would be from 2014 when you moved until 2021 when you learned about the escheat of the stock, correct?
> A: Correct.

[16] *Id.* at 26–27.

[17] *Id.* at 10; Plaintiff Jonathan Saunders' Answering Brief in Opposition to Defendants' Joint Motion for Summary Judgment ("Pl.'s Answer to Mot. for Summ. J.") Ex. 5 (D.I. 60).

[18] Saunders Dep. 10–12, 17–19, 58–59; *see* Compl. ¶¶ 21–22.

happenstance informalities in a casual setting with no official documentation or minutes.[19] There is no record of Dr. Saunders taking any further action regarding his Lightwave shares at any point from 2013 to 2021.[20]

But there was activity on the other side. Lightwave, through Broadridge, mailed annual meeting notices and instructions to Dr. Saunders in 2014, 2015, and 2016.[21] Broadridge sent Dr. Saunders a dormant account letter dated October 5, 2016; it warned him of a then-looming escheatment and how to avoid it.[22] And later that same month, Broadridge identified Dr. Saunders to Lightwave as an inactive Lightwave shareholder whose account might be subject to escheatment in early 2017.[23]

The shares were escheated—that is, transferred from Lightwave (through Broadridge) to the Delaware Office of Unclaimed Property (OUP)—on January 26, 2017.[24] The OUP sent at least one outreach notice in March of 2017 to notify Dr. Saunders that his shares had been escheated.[25] From February 2017 through

---

[19]  *See* Compl. ¶¶ 21–22.

[20]  *See* Saunders Dep. 59–60.

[21]  Defs.' Opening Br. in Supp. of Mot. for Summ. J. Ex. B ("Rudden Dep."), at 95–103, 106–13 (D.I. 67); *see also id.* Exs. D, E ("2014 and 2015 Annual Notices") (D.I. 67).

[22]  *Id.* Ex. H ("Dormant Account Letter") (D.I. 67); *see* Rudden Dep. 120–39.

[23]  *Id.* Exs. F, G ("Email from Broadridge to Lightwave") (D.I. 67).

[24]  *Id.* Ex. I ("OUP Final Response Letter"), at 1 (D.I. 67).

[25]  *See id.*; *see also id.* Exs. J, K, and L ("OUP Outreach Letter Templates and Feb. 2017 OUP Property Database Printout") (D.I. 67); *see also id.* Ex. C ("Mayrack Dep."), at 71–87, 93–94 (D.I. 67).

September 2021, the OUP also listed Dr. Saunders' escheated Lightwave shares on its searchable, publicly accessible website.[26] In the interim, consistent with then-extant Delaware law, the State sold the escheated shares for $69,298 in June 2017.[27]

Dr. Saunders doesn't recall receiving any of the above-described mailings.[28] And he believes that neither Lightwave, Broadridge, nor the OUP could have mailed him anything after his 2014 move because—to this day—he and his wife continue to collect any mail that's been misdirected to the old Belmont Drive address from the couple now living there.[29]

Dr. Saunders didn't realize that his Lightwave stock had escheated until July 2021, after he again went to open a brokerage account because he learned Lightwave had been (or was soon to be) uplisted to the NASDAQ.[30] When his financial advisor attempted to transfer the stock, he quickly discovered that Dr. Saunders' Lightwave shares had been cancelled and escheated to the State of Delaware.[31] Dr. Saunders then endeavored to somehow retrieve those shares. He couldn't.[32]

---

[26] Mayrack Dep. 117, 127–30 (explaining the website contents, posting process, and that the OUP website-published notice would include "the owner's name, city and state, holder name, and then over or under $50").

[27] *See* OUP Final Response Letter, at 1–2.

[28] *See* Compl. ¶ 20; Saunders Dep. 34–35, 40–41.

[29] Compl. ¶ 20; Saunders Dep. 21–29, 34–35, 41.

[30] Saunders Dep. 31–34.

[31] *Id.* at 31–33; Pl.'s Answer to Mot. for Summ. J. Exs. 6 ("Email re: Lightwave Logic – Questions") and 8 ("Email re: Delaware Unclaimed Property") (D.I. 60).

[32] *E.g.*, Pl.'s Answer to Mot. for Summ. J. Exs. 5, 9; OUP Final Response Letter, at 1.

After processing his claim, the OUP sent Dr. Saunders a check for $69,298 in September 2021.[33] But Dr. Saunders never cashed the check and complains that the amount offered by the OUP is unacceptably less than the shares' value.[34] Dr. Saunders insists that he would have sold his shares on December 10, 2021, for $19.56 per share, totaling approximately $1,075,800—which happens to be Lightwave shares' highest daily recorded value since being listed on the NASDAQ.[35]

## B. Dr. Saunders Sues Lightwave and Broadridge

A year after refusing the OUP's payment, and more than five years after his shares were escheated, Dr. Saunders brought this action in the Court of Chancery alleging negligence, conversion, and breach-of-fiduciary-duty.[36] But that Court questioned whether it had subject matter jurisdiction over Dr. Saunders' claims.[37] So the parties then stipulated to dismissal of the breach-of-fiduciary-duty claim and transfer of the action to this Court.[38] Now, Dr. Saunders has two remaining counts against Defendants—first, a claim for negligence (jointly and severally)[39] and

---

[33] OUP Final Response Letter, at 1.

[34] Saunders Dep. 44–45; Pl.'s Answer to Mot. for Summ. J. 6 (D.I. 59).

[35] Compl. ¶¶ 43–44; *Lightwave Logic, Inc. Common Stock (LWLG)*, NASDAQ, https://www.nasdaq.com/market–activity/stocks/lwlg (last visited Oct. 15, 2024).

[36] *See Saunders v. Lightwave Logic, Inc., et al.*, C.A. No. 2022–0882–MTZ (Del. Ch. Sept. 30, 2022) ("Ch. Dkt.") (D.I. 1).

[37] Ch. Dkt. (D.I. 21) (Vice Chancellor's Letter to Counsel).

[38] *See* Compl. Ex. 1 (Stipulation and Order of 10 *Del. C.* § 1902 Transfer).

[39] Compl. ¶¶ 45–55. "In general, to prove negligence one must establish that defendant breached

- 6 -

second, a claim for conversion (jointly and severally).[40]

In the Complaint before this Court, Dr. Saunders alleges that the Defendants were "wrongful and grossly negligent" in determining that his Lightwave shares were subject to escheatment.[41] He also claims their alleged acts and failures were "done in bad faith."[42]

## C. THE MOTION TO DISMISS AND LIMITED DISCOVERY PERIOD

Upon arrival here, Defendants again moved to dismiss Dr. Saunders' Complaint, contending that his claims were barred by a three-year statute of limitations.[43] In opposition, Dr. Saunders said the statute of limitations should be tolled because his injury—the loss of his stock—was inherently unknowable.[44]

The Court denied Defendants' motion to dismiss, reasoning that—on the then-extant record and with the accusation of bad faith lingering—it was at least reasonably conceivable that Dr. Saunders might be able to carry his burden on a

---

a duty owed to plaintiff and that defendant's act or omission proximately caused plaintiff's injury." *Spencer v. Goodill*, 17 A.3d 552, 554 (Del. 2011).

[40] Compl. ¶¶ 56–61. "Conversion is the act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." *CLP Toxicology, Inc. v. Casla Bio Hldgs. LLC*, 2021 WL 2588905, at \*14 (Del. Ch. June 14, 2021) (internal quotations and citation omitted). "The necessary elements for a conversion under Delaware law are that a plaintiff: (1) had a property interest in the converted property; (2) had a right to possession of the property; and, (3) the property was converted." *Id.*

[41] Compl. ¶¶ 2, 16, 30, 34, 52.

[42] *Id.* at ¶ 35.

[43] D.I. 6.

[44] D.I. 8.

tolling exception.[45]

The Court then had the parties engage in "limited discovery" to address "key factual questions" that might elucidate the "applicability of the inherently unknowable injury doctrine as a tolling mechanism here."[46] For "[t]he application of that rule is necessarily based on the facts of each case."[47] And the question of whether the inherently unknowable doctrine is applicable to a cause of action like Dr. Saunders' hadn't yet been squarely addressed by a Delaware court.[48]

From there, the parties engaged in limited discovery on the statute of limitations and the tolling exception's applicability. Both parties, as well as the OUP, produced various documents. In addition, the parties conducted depositions of Dr. Saunders,[49] Lightwave's President/Chief of Operations,[50] Broadridge's Vice President of Operations,[51] and the Delaware State Escheator (on behalf of the OUP).[52]

---

[45] *Saunders v. Lightwave Logistics, Inc.*, 2023 WL 4851630, at *3–5 (Del. Super. Ct. July 28, 2023).

[46] *Id.* at *5.

[47] *Coleman*, 854 A.2d at 842.

[48] *See Smith v. McGee*, 2006 WL 3000363, at *4 (Del. Ch. Oct. 16, 2006) (noting that, even if available, the inherently unknowable doctrine could not be applied to the contested breach of fiduciary duty, fraud, and conversion claims pled in that case because there was actual knowledge of the alleged improper conduct at issue).

[49] *See generally* Saunders Dep.

[50] *See generally* Pl.'s Answer to Mot. for Summ. J. Ex. 2 ("Marcelli Dep.") (D.I. 60).

[51] *See generally* Rudden Dep.

[52] *See generally* Mayrack Dep.

## D. THE MOTIONS NOW BEFORE THE COURT

With all that complete, Defendants now move for summary judgment maintaining that Dr. Saunders' claims are barred by the statute of limitations.[53] In support of their summary judgment reply brief, Defendants filed an *errata* sheet and corresponding letter.[54] Dr. Saunders moves to strike those filings.[55] And as permitted by the Court's Case Management Order, both parties have also filed letter arguments regarding Dr. Saunders' right to a jury trial should the matter survive the statute-of-limitations contest.[56]

The Court has heard argument on all these pending motions and applications. They are now ripe for decision.[57]

---

[53] D.I. 57 (Defendants' Joint Motion for Summary Judgment).

[54] *See generally* Defendants' Joint Reply Brief in Support of Motion for Summary Judgment ("Defs.' Reply Br. in Supp. of Mot. for Summ. J.") Ex. Q ("Mayrack *Errata* Sheet") and Ex. R ("OUP Counsel Letter") (D.I. 61).

[55] D.I. 63.

[56] *See generally* D.I. 76 (Defendants' Jury Trial Letter); *see also* D.I. 79 (Plaintiff's Jury Trial Letter); *see also* D.I. 46 (Case Management Order) § VI.A.2.

[57] Dr. Saunders' motion to strike the *errata* sheet and corresponding counsel letter invokes this Court's Civil Rules 12(f) and 30(e). *See* Del. Super. Ct. Civ. R. 12(f) (providing that the "Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter"); Del. Super. Ct. Civ. R. 30(e) (permitting a witness to review the transcript of a deposition and to submit to the Court revisions along with reasons for those changes); *see also Mills v. Gosling Creek, Inc.*, 1993 WL 485901, at *2 (Del. Super. Ct. Oct. 6, 1993) ("The applicable test in determining whether to strike is whether the challenged averment is relevant to an issue in the case, and whether the averment is unduly prejudicial." (citation omitted)).

Upon review, the Rule 30(e) objection to the *errata* sheet and counsel letter is well-founded; both are stricken under Rule 12(f). *See Alberts v. All About Women, P.A.*, 2020 WL 6588643, at *3–7 (Del. Super. Ct. Nov. 10, 2020) (detailing how Rule 30(e) permits changes in form and substance, but "does not allow [a witness] to improperly alter what they testified to under oath" or treat the

## II.  THE PARTIES' CONTENTIONS

Defendants move for summary judgment dismissal of Dr. Saunders' two counts—negligence and conversion.  Defendants' sole ground for such relief is that the counts are barred by the statute of limitations.[58]  In response to Dr. Saunders' attempt to seek refuge via the "inherently unknowable injury" tolling exception, Defendants say that it wasn't practically impossible for Dr. Saunders to learn that his Lightwave stock escheated, and that he wasn't blamelessly ignorant of that occurrence.[59]

Defendants rely on certain evidence in the now-developed record to contend that, though they failed on their motion to dismiss, they are now entitled to summary judgment ending this suit.[60]

Dr. Saunders opposes Defendants' motion, insisting that the discovery rule tolling exception applies here.  He challenges many of the facts that Defendants say

---

deposition like "a practice quiz" . . . the *errata* sheet "is not a license to change answers for damage control, or to add things the deponent wishes she had said," especially unambiguous sworn testimony given in response to clear questions).

Plaintiff's Motion to Strike is granted.  The Court did not consider either the Mayrack *Errata* Sheet or the OUP Counsel Letter in reaching its summary judgment decision.

[58]  Defs.' Opening Br. in Supp. of Mot. for Summ. J. 14–25 (D.I. 66).

[59]  *Id.* at 18–21.

[60]  *E.g.*, Defs.' Opening Br. in Supp. of Mot. for Summ. J. 7–8, 9–12, 18–19, 23; *id.* Ex. O ("April 9, 2024 OUP Database Screenshot"); 2014 and 2015 Annual Notices; Dormant Account Letter; OUP Outreach Letter Templates and Feb. 2017 OUP Property Database Printout; Defs.' Reply Br. in Supp. of Mot. for Summ. J. Ex. S ("April 26, 2024 OUP Database Screenshot") (D.I. 61).

are indisputable.[61]   In sum, Dr. Saunders maintains that Lightwave never mailed annual meeting notices, Broadridge never sent the Dormant Account Letter, the OUP never mailed its outreach letter, and the OUP never published notice.[62]   Dr. Saunders stands his ground, saying that tolling the statute of limitations is required because his injury was inherently unknowable and he was blamelessly ignorant of it.[63]

## III.  STANDARD OF REVIEW

Summary judgment is available only "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits" show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[64]   And on a motion for summary judgment based on a statute of limitations defense, "the Court must grant the motion if the record reveals that no genuine issue of fact exists regarding the date on which the applicable statute of limitations began to run, the date to which the statute of limitations may have been tolled, and the date on which the plaintiff filed h[is] complaint with the court."[65]   The defendant, as summary judgment movant, "bears

---

[61]   *See* Pl.'s Answer to Mot. for Summ. J. 8–16.

[62]   *Id.*

[63]   *Id.* at 16–23.

[64]   Del. Super. Ct. Civ. R. 56(c); *Options Clearing Corp. v. U.S. Specialty Ins. Co.*, 2021 WL 5577251, at *7 (Del. Super. Ct. Nov. 30, 2021).

[65]   *Burrell v. AstraZeneca LP*, 2010 WL 3706584, at *2 (Del. Super. Ct. Sept. 20, 2010) (citing *McClements v. Kong*, 820 A.2d 377, 381 (Del. Super. Ct. 2002)).

the burden of proving that a limitations period has lapsed and that the claim is time-barred."[66]  But, when a complaint asserts a cause of action that on its face accrued outside the statute of limitations, "the plaintiff bears the burden to show that a viable tolling doctrine applies."[67]

A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[68]  And as always, when determining whether there is a genuine issue of material fact, the Court must view the evidence in the light most favorable to the non-moving party and draw all *rational* inferences that favor that side.[69]

Without doubt, a "Court may not be able to grant summary judgment if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record."[70]  But in the end, "a matter should be disposed of by summary judgment whenever an issue of law is involved and a trial is

---

[66]  *Machala v. Boehringer Ingelheim Pharm., Inc.*, 2017 WL 2814728, at *6 (Del. Super. Ct. June 29, 2017).

[67]  *Nalda v. Green Valley Home Inspections, LLC*, 2021 WL 3783640, at *4 (Del. Super. Ct. Aug. 24, 2021); *Playtex, Inc. v. Columbia Casualty*, 1993 WL 390469, at *4 (Del. Super. Ct. Sept. 20, 1993) ("The burden of showing that the statute should be tolled rests with the party asserting the tolling.").

[68]  *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).

[69]  *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Nalda,* 2021 WL 3783640, at *4 ("the Court should grant summary judgment unless the evidence, viewed in the light most favorable to the [plaintiffs], supports the application of a tolling doctrine.").

[70]  *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *4 (Del. Super. Ct. Oct. 28, 2020) (cleaned up).

unnecessary."[71]

## IV. DISCUSSION

Defendants move for summary judgment dismissal of Dr. Saunders' claims as time-barred. Actions filed outside the applicable statute of limitations "are barred and are the subject of dismissal pursuant to a motion for summary judgment."[72] It's agreed that the injury for which the Defendants can be deemed responsible—transfer of the shares to the State—took place on January 26, 2017. Under 10 *Del. C.* § 8106, Dr. Saunders then had three years to file suit to address that purported injury.[73] His Court of Chancery suit was filed well past that in late September 2022.[74] So, unless the statute of limitations is tolled, his claims are untimely and dismissible.[75]

To save his claims, Dr. Saunders attempts to invoke the "discovery rule" tolling exception. Under the specific exception called upon, the statute is tolled

---

[71] *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999) (citing *Mitchell v. Wolcott*, 83 A.2d 759, 761 (Del. 1951)).

[72] *Alonso v. Maldonado*, 2015 WL 7068206, at *2 (Del. Super. Ct. Nov. 12, 2015) (cleaned up); *see also In re Asbestos Litig.*, 2015 WL 5168121, at *1 (Del. Super. Ct. Sept. 1, 2015) ("When a motion for summary judgment is based on a statute of limitations defense, the Court will grant the motion if upon the record no genuine issues of fact exist as to 'the date on which the applicable statute of limitations began to run, the date to which the statute of limitations may have been tolled, and the date on which the plaintiff filed [his or] her complaint with the court.'" (quoting *Burrell*, 2010 WL 3706584, at *2)).

[73] DEL. CODE ANN. tit. 10, § 8106(a) (2016).

[74] *See* Ch. Dkt. D.I. 1 (Initial Court of Chancery Complaint dated Sept. 30, 2022).

[75] *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319–21 (Del. 2004) (analyzing tolling doctrines needed to save an otherwise untimely cause of action).

where the injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[76]  If that exception applies, the statute will begin to run "upon the discovery of facts 'constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery' of such facts."[77]  And if that tolling exception applies, it is the plaintiff who "bear[s] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled."[78]

## A. THE REPORTING AND ESCHEATMENT OF THE SHARES TO THE STATE AND THEIR SUBSEQUENT LIQUIDATION ISN'T THE TYPE OF INJURY THAT CAN BE DEEMED "INHERENTLY UNKNOWABLE."

The parties agree that 10 *Del. C.* § 8106 imposes a three-year period of limitations on the initiation of Dr. Saunders' negligence and conversion claims.  A cause of action accrues under § 8106 at the time of the wrongful act, "even if the

---

[76]  *Id.* (quoting *Coleman*, 854 A.2d at 842).

[77]  *Coleman*, 854 A.2d at 842 (quoting *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del. 1982) (emphasis in original)).

[78]  *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (citing *U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 504 (Del. 1996)); *see also State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 524 (Del. Ch. 2005) ("A plaintiff asserting a tolling exception must plead facts supporting the applicability of that exception."); *Young & McPherson Funeral Home, Inc. v. Butler's Home Improvement, LLC*, 2015 WL 4656486, at *1 (Del. Super. Ct. Aug. 6, 2015) ("The defendant bears the burden of proving that a limitations period has lapsed and that a claim is time-barred. However, when a complaint asserts a cause of action that *on its face accrued outside the statute of limitations* the *plaintiff has the burden of pleading facts leading to a reasonable inference* that one of the tolling doctrines adopted by Delaware courts applies." (emphasis added) (cleaned up)).

plaintiff is ignorant of the cause of action."[79]  And for tort claims, a cause of action accrues at the time of the injury.[80]

"[T]he doctrine of inherently unknowable injuries will toll the statute of limitations 'while the discovery of the existence of a cause of action is a practical impossibility.'"[81]  And tolling thereunder requires there be "no observable or objective factors to put a party on notice of an injury . . . ."[82]  The escheatment of Dr. Saunders' Lightwave shares wasn't inherently unknowable as that is understood under Delaware law.

Delaware courts first found and have since recognized the possibility of inherently unknowable injuries in certain medical and other professional malpractice cases.[83]  But our courts have repeatedly declined to apply (or even recognize) any such exception in cases where the plaintiff "should have been

---

[79]  *Lehman Bros. Hldgs., Inc. v. Kee*, 268 A.2d 178, 185 (Del. 2021) (quoting *Wal-Mart Stores*, 860 A.2d at 319).

[80]  *ISN Software Corp*, 226 A.3d at 732 ("For tort claims . . . the wrongful act occurs at the time of injury.").

[81]  *Saunders*, 2023 WL 4851630, at *2 (quoting *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *8 (Del. Super. Ct. Dec. 4, 2019) and *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5).

[82]  *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5.

[83]  *See, e.g.*, *Layton v. Allen*, 246 A.2d 794, 798 (Del. 1968); *Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130, 132–33 (Del. 1974); *Child, Inc. v. Rodgers*, 377 A.2d 374, 377 (Del. Super. Ct. 1977), *aff'd*, *Pioneer Nat'l Title Ins. Co. v. Child, Inc.*, 401 A.2d 68, 72 (Del. 1979). The discovery rule is applied in professional negligence cases because of "the special nature of the relationship between a professional person and client" and "the inability of a layman to detect a professional's negligence." *Isaacson, Stolper & Co.*, 330 A.2d at 133. *See also AM Gen. Hldgs.*, 2016 WL 4440476, at *14 (discussing development of Delaware's inherently unknowable injury exception).

knowledgeable."[84] At bottom, when available in a Delaware action, any "[a]pplication of the time of discovery rule delays the starter's gun for the statute of limitation [only] in certain narrowly carved out limited circumstances when the facts at the heart of the claim are so hidden that a reasonable plaintiff could not timely discover them."[85]

For claims affecting financial instruments and transactions, other federal and state courts are hesitant to apply the inherently unknowable exception; there's a finality imperative for those instruments and transactions that isn't present in the malpractice claims closer to the doctrine's origin.[86] In turn, other courts have refused to extend the discovery rule to actions for conversion of negotiable instruments unless there is fraudulent concealment of the injury.[87] Contrary to the claims that

---

[84] *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 652 (Del. Super. Ct. 1985); *see, e.g.*, *Mastellone*, 82 A.2d at 383 (finding that "ignorance of a [stock] conversion does not impede the operation of the Statute of Limitations"); *id.* ("Plaintiff's long-maintained ignorance of what happened to his stock . . . gives him no aid."); *Leibowitz v. Hicks*, 207 A.2d 371, 372–74 (Del. Ch. 1965) (failing to notify a plaintiff-creditor of a court order directing creditors to file claims did not toll the statute); *Artesian Water Co. v. Lynch*, 283 A.2d 690, 692 (Del. Ch. 1971) (finding that plaintiff's unawareness that dividends brokerage house mistakenly sent to wrong address didn't toll statute).

[85] *AM Gen. Hldgs.*, 2016 WL 4440476, at *15.

[86] On the other hand, there would in those other circumstances be a countervailing unfairness to the unwitting victim who often cannot even know of his harm until it actually manifests as pain, trouble, or ill health. *See Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 890 F.2d 456, 461 (D.C. Cir. 1989), *on reh'g* (Jan. 10, 1990) (explaining that "[u]nlike many medical or legal malpractice cases and latent-disease cases in which the injury is not manifested until long after the unlawful act, the injury to [one] in a conversion case manifests itself at the time the wrongful act occurs . . . . Thus, the *injury* in the [instrument or transaction] case is not latent.") (emphasis in original).

[87] *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 622 (Tenn. 2002) (listing cases).

historically give rise to the exception,[88] "[t]he finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends."[89] Though no doubt, the negotiable instruments previously addressed are a different species of commercial document, like concern abides here. To permit the inherently unknowable exception to extend as asked could disrupt the subsequent commercial transactions or expose a corporation to additional liability when there is no suggestion that it has done anything but follow state law[90] and well-accepted norms of keeping record of its shares.[91]

What's more, in Delaware, "the time of discovery rule operates to toll the statutory period until the claimant is on inquiry notice of its claim—that is, until

---

[88] *Coleman*, 854 A.2d at 842 ("This Court has applied the above-described 'discovery rule' in cases claiming accounting and attorney malpractice, because of the special character of the relationship between the professional and the client, and the inability of a layperson to detect the professional's negligence.").

[89] *Menichini v. Grant*, 995 F.2d 1224, 1231 (3d Cir. 1993) (quoting *Fuscellaro v. Industrial Nat'l Corp.*, 368 A.2d 1227, 1231 (R.I. 1977)).

[90] *See generally* DEL. CODE ANN. tit. 12, §§ 1130–1188 (2024) (governing escheat of unclaimed property).

[91] *See generally In re Appraisal of Dell Inc.*, 2015 WL 4313206, at *8–9 (Del. Ch. July 13, 2015) (deciding petitions for appraisal and outlining a corporation's and its transfer agent's recordkeeping responsibilities with regard to the company's stockholders of record and stock transactions); *see also American Hardware Corp. v. Savage Arms Corp.*, 136 A.2d 690, 692 (Del. 1957) (noting the risk taken by a shareholder when he registers his shares in certain ways); *id.* at 693 (addressing an injunction seeking to prevent transaction of business at a stockholders' meeting and explaining: "[t]he corporation has ordinarily discharged its obligation under Delaware law when it mails notice to the record owner.").

facts surface that would lead a reasonably prudent person to discover the wrong."[92] That, of course, suggests that the triggering information or facts must be in some way buried—either by their very nature, an expertise needed to discern them, or designed obfuscation. Here they were not.

This Court is—as have others in like circumstances—in the unenviable position of visiting a harsh result.[93] The inherently unknowable injury doctrine is not available for Dr. Saunders' causes of action as a matter of law. The damage complained-of occurred, at the absolute latest, upon the moment of sale of his escheated shares by the OUP. The applicable statute of limitations then allowed three years from that date to discover Lightwave and Broadridge's purported negligence in allowing that to happen or wrongful conversion—which could and should have been easily done upon Dr. Saunders' ordinary tending of his personal financial affairs. Absent fraudulent concealment on the part of those in Defendants' place, this allows ample time for a plaintiff to discover the type of injury pled here.

---

[92] *AM Gen. Hldgs.*, 2016 WL 4440476, at *15.

[93] *See Pero's Steak & Spaghetti House*, 90 S.W.3d at 624 (observing that "[n]ot applying the discovery rule may very well be harsh in certain cases"); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 479 (Iowa 1990) (noting that it may well be a "tempting choice" to misapply the discovery rule in an individual case because "[s]trict application of the limitations period, [is] predictably harsh in some cases").

**B. WHILE THE NATURE OF THE INJURY ALLEGED ITSELF ELUDES LABELING AS "INHERENTLY UNKNOWABLE," THE RECORD DEVELOPED FURTHER DEMONSTRATES THE ILL FIT OF THE EXCEPTION EVEN WERE IT AVAILABLE.**

The now better-developed record exemplifies just why the unknowable injury doctrine—as opposed to perhaps those alleging fraud, concealment, and similar wrongdoing[94]—is unworkable and unavailable to a cause of action alleging negligence and conversion related to an escheatment of stock. Attempts were made to contact Dr. Saunders on multiple occasions about his stock's status.[95]

---

[94] *See AM Gen. Hldgs.*, 2016 WL 4440476, at *15 (explaining that the most-oft-recognized doctrines permitting tolling of the limitations period where the facts underlying a claim were so hidden that a reasonable plaintiff could not timely discover them are: "(1) where the defendant has fraudulently concealed key facts; (2) where the injury was inherently unknowable such that discovery of its existence is a practical impossibility; and (3) where a plaintiff reasonably relies on the competence and good faith of a fiduciary who is alleged to have engaged in wrongful self-dealing (also referred to as the 'equitable tolling doctrine')") (cleaned up).

[95] Vain attempts are made throughout the briefing to disrupt the timeline recounted earlier and to sow doubt as to each information-providing document or event mentioned. The Court is mindful that generally on summary judgment its role "is to identify disputed factual issues whose resolution is necessary to decide the case, but not to decide such issues." *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992). But an "opposing party may not merely assert the existence of a disputed issue of fact; the opponent of a motion for summary judgment 'must do more than simply show that there is some metaphysical doubt material facts.'" *Brown v. Dover Downs, Inc.*, 2011WL3907536, at *2 (Del. Super. Ct. Aug. 30, 2011) (quoting *Brzoska*, 668 A.2d at 1364).

Were the Court to have found the inherently unknowable doctrine available, the most salient facts on "practical impossibility" would relate to the content, timing, and sending of the notices provided by Lightwave, Broadridge, and OUP—not whether they were actually received. And the evidence supporting those most salient facts is that regularly deemed reliable. *See* D.R.E. 803(6) (business records exception to the hearsay rule); *id.* 803(8) (public records exception); *see also Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 117 (Del. Super. Ct. 2014) (noting that when deciding a summary judgment motion, the Court often does and may only rely on evidence that would be admissible at trial). Any lack of availability or certitude of the evidence of the issues plaintiff focuses on is the product of his delayed filing–the very ill a statute of limitations seeks to prevent. *See Nat'l Iranian Oil Co.*, 983 F.2d at 493 ("Statutes of limitations protect defendants from having to confront controversies in which the search for truth may be thwarted by the loss of evidence, the fading of memories, or the disappearance of witnesses.").

In addition to the information that he could easily have obtained himself upon the most cursory inquiry, multiple efforts—both via mail and publicly—were made to warn Dr. Saunders about the dormancy determination, transfer, and eventual escheatment. To stay true to the origin and now-developed requirements of the inherently unknowable injury doctrine, the Court cannot hold that discovery of the escheatment was a "practical impossibility."[96] In total, the now-developed record doesn't establish that Dr. Saunders' alleged injury could be deemed "inherently unknowable."

Nor could the Court find that Dr. Saunders was "blamelessly ignorant." He bears the burden of showing his blameless ignorance.[97] And he admits that he didn't tell Lightwave that he changed addresses in 2014, just after he purchased his Lightwave shares.[98] With that failure to provide such important contact information alone, Dr. Saunders can't be said to be *blamelessly* ignorant of his stock's escheatment.

As well, Dr. Saunders didn't check on his shareholder status or actively

---

[96] *See, e.g.*, *AM Gen. Hldgs.*, 2016 WL 4440476, at *13 (holding that with inspection rights "in hand, [a plaintiff] cannot be heard to argue that discovery of the facts supporting its breach claims . . . was a 'practical impossibility'") (citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5–6 (holding that "the running of the statute of limitations is tolled [only] while the discovery of the existence of a cause of action is a practical impossibility")).

[97] *In re Tyson Foods*, 919 A.2d 563, 585 (Del. Ch. 2007); *see also In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6.

[98] Saunders Dep. 25.

communicate directly with Lightwave or Broadridge in any meaningful way between 2013 and 2021—and most critically from 2017 to 2021. "An injury is not 'inherently unknowable' where a plaintiff possesses all of the tools to discover it, but simply waits a while."[99] Reasonable (or any) diligence on Dr. Saunders' part during that four-year period surely would have revealed that his stock had escheated—discovery of the injury was, at most, a phone call or mouse click away.[100] That too would belie any suggestion of the blameless ignorance required in this instance.

Dr. Saunders avers that he never received any of the mailings sent by Lightwave, Broadridge, or the OUP—and that he never saw the public notice.[101] But it can't be enough to simply deny (or even facilitate non-)receipt and plead ignorance. "Tolling doctrines will not aid a claimant who turned a blind eye to a known [or readily knowable] problem."[102] Nor does the objective discovery rule "reward denial or self-induced ignorance."[103] The tolling exception pled here requires *blameless* ignorance; Dr. Saunders fails in any attempt to invoke it.

---

[99] *Smith v. Donald L. Mattia, Inc.*, 2012 WL 252271, at *3 n.18 (Del. Ch. Jan. 13, 2012).

[100] *See Jepsco, Ltd. v. B.F. Rich Co.*, 2013 WL 593664, at *11 (Del. Ch. Feb. 14, 2013) (finding that matters of public record may be sufficient to provide inquiry notice).

[101] Pl.'s Answer to Mot. for Summ. J. 16–21.

[102] *Barbosa v. Bob's Canine Acad., Inc.*, 2017 WL 2492042, at *7 (Del. Ch. May 19, 2017).

[103] *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 137 (2016)).

# V. CONCLUSION

Dr. Saunders' negligence and conversion claims can't survive summary judgment. Despite his best efforts to contend otherwise, the Defendants' 2017 escheatment of his Lightwave shares to the State is not a type of injury that could be deemed as inherently unknowable—that is, one the discovery of which was a "practical impossibility." As such the inherently unknowable injury exception simply isn't available here as a matter of law to toll the statute of limitations and allow the filing of suit five years after the alleged injury occurred. And were it available, the undisputed facts demonstrate that Dr. Saunders wasn't blamelessly ignorant of that alleged injury's occurrence.

Resultingly, the harshness of the untolled application of § 8106(a)'s three-year limitations period requires entry of summary judgment in Defendants' favor. Their Motion for Summary Judgment is **GRANTED** and Plaintiff's Request for a Jury Trial is **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

- 22 -